UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

LOUIS CROCKER,
DANIELLE AND JASON CHARLES,
on behalf of themselves and all others
similarly situated,

       Plaintiffs

v

CLEVELAND-CLIFFS STEEL CORP.
(d/b/a AK STEEL DEARBORN WORKS)

       Defendant

Case No.: 2:21-cv-11937-VAR-CI

Judge Victoria A. Roberts

# FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND

COMES NOW the Plaintiffs, Louis Crocker and Danielle and Jason Charles, on behalf of themselves and all others similarly situated, by and through the undersigned counsel, and for their Complaint against the Defendant allege and state as follows:

## INTRODUCTION

1.    The Plaintiffs, on behalf of themselves and all others similarly situated, bring this class action against Cleveland-Cliffs Steel Corporation (the "**Defendant**") in relation to its ownership and operation of a steel manufacturing plant located at 4001 Miller Road, City of Dearborn, County of Wayne, State of Michigan (the "**Steel Facility**").

2.    Through the Defendant's operation and maintenance of the Steel Facility, it wrongfully and tortiously releases substantial and unreasonable noxious odors, dust, and air particulates that physically invade the Plaintiffs' and putative Class' properties, causing damages through private nuisance, public nuisance, and negligence.

1

## THE PARTIES

3.   Plaintiff Louis Crocker owns and resides at a home located at 9119 Avis Street, City of Detroit, County of Wayne, State of Michigan.

4.   Plaintiffs Danielle and Jason Charles own and reside at a home located at 17234 Eddon Street, City of Melvindale, County of Wayne, State of Michigan.

5.   Defendant Cleveland-Cliffs Steel Corporation is a Delaware corporation that purchased the AK Steel conglomerate, including AK Steel Dearborn Works, in or around March 2020. It owns and/or directs the operation of the Steel Facility, which carries on business as "AK Steel Dearborn Works", located at 4001 Miller Road, City of Dearborn, County of Wayne, State of Michigan.

## JURISDICTION AND VENUE

6.   This Court has jurisdiction pursuant to the *Class Action Fairness Act* ("CAFA"), 28 U.S.C. § 1332(d). CAFA jurisdiction is appropriate because there are 100 or more Class Members and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

7.   Independent of and in addition to original jurisdiction under CAFA, this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).

8.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events or omissions giving rise to Plaintiffs' claims took place in this Judicial District, and because the property that is the subject of this action is situated in this Judicial District.

## BACKGROUND

9. The Defendant owns, operates, and/or controls the Steel Facility, which is situated on 350 acres of land and is surrounded by residential properties.

10. The Steel Facility manufactures various products, including rolled carbon steels, galvanized steels, and advanced high strength steels.

11. The facilities used in manufacturing these products include blast furnaces, oxygen furnaces, metallurgy furnaces, RH vacuum degassers, slab casters, cold mills, and hot dip lines.

12. The byproducts generated by the Defendant's Steel Facility operations include the following:

   a) Dust;

   b) Noxious odors and gases;

   c) Flames, smoke, and plumes;

   d) Ash and soot;

   e) Coke and coke breeze;

   f) Kish, slag, and other broken glass-like particulates; and

   g) Iron/metallic particles.

13. The Steel Facility has additional dust sources that contribute to the atmospheric particulate burden, such as vehicular traffic on paved and unpaved roads. This consists of plant personnel and visitors, plant service vehicles, and trucks hauling raw materials, steel products, and waste materials.

14. Materials are also transported by clamshell buckets, bucket/ladder conveyors, rotary railroad dumps, bottom railroad dumps, front end loaders, truck dumps, and conveyor transfer stations.

15. Such management and handling disturbs the materials and exposes them to the wind. Even materials resting on flat areas or in storage piles are subject to wind erosion.

## GENERAL ALLEGATIONS

16. The Defendant, its predecessors, and/or its agents constructed or directed the construction of the Steel facility.

17. The Defendant exercises ownership and control of the Steel Facility, which is surrounded by residential properties.

18. Through its operation of the Steel Facility, the Defendant releases fugitive noxious odors, dust, and air particulates into the ambient air as part of routine procedures and/or by acquiescence.

19. The Plaintiffs and the putative Class Members reside within 1.5 miles of the Steel Facility's property boundary (the "**Class Area**").

20. The Plaintiffs' and putative Class' properties have been, and continue to be, physically invaded by the fugitive noxious odors, dust, and air particulates from the Steel Facility.

21. These fugitive emissions are deposited throughout surrounding neighborhoods and have been dispersed across all public and private land within the Class Area.

### *The Defendant's Fugitive Emissions*

22. A properly designed, operated, and maintained steel facility will adequately capture, remove, and dispose of noxious odors, dust, and air particulates, and will not emit such odors, dust, and particulates into the ambient air as fugitive emissions.

23. The Defendant is required to control noxious odors, dust, and air particulate emissions by, among other things, operating the Steel Facility in a manner that adequately captures, controls, and mitigates such emissions so as to prevent them from escaping into the ambient air

surrounding the Steel Facility, and by implementing other reasonably available emission mitigation, elimination, and control systems at the Steel Facility.

24. The Defendant has failed to utilize adequate emission mitigation strategies, processes, technologies, and equipment to control fugitive emissions from the Steel Facility and prevent those fugitive emissions from invading the homes and properties of the Plaintiffs and the putative Class.

25. The Defendant's failures to prevent off-site emissions include, but are not limited to:

    a) Utilizing inadequate systems for processing steel, including the mismanagement of raw ingredients and byproducts;

    b) Operating and maintaining a steel manufacturing process that inadequately captures, controls, and/or mitigates particulate emissions;

    c) Failing to adequately treat and filter the exhaust produced through industrial operations prior to emitting it into the ambient air;

    d) Failing to develop and/or implement an adequate particulate prevention plan;

    e) Failing to utilize other particulate prevention, elimination, and mitigation measures and technology available to the Defendant; and

    f) Other failures revealed during discovery.

### *Impact of the Defendant's Emissions on the Plaintiffs and Class*

26. The Steel Facility and its air particulate emissions have been the subject of frequent complaints by citizens in the nearby residential area.

27. Fugitive emissions from the Steel Facility have interfered with activities in the surrounding areas, and they have precluded the reasonable use and enjoyment of private and public spaces in those areas.

28.     More than 40 households within the proposed Class Area have contacted Plaintiffs' counsel in relation to the noxious odors, dust, and air particulates originating from the Steel Facility.

29.     Plaintiffs Danielle and Jason Charles reported that because of the fugitive emissions, they "[c]an't go outside or have windows/doors open (no fresh air). The smell gets so bad you don't want to be outside". Further, there are "layers of dust all over inside of house & all over vehicles & outside house".

30.     Plaintiff Louis Crocker reported that the "summer months are hell, without AC you're forced to use window fans and fill your home with dirt. My patio furniture is always covered with dirt, vehicles covered with fallout, and the odors are unbelievable".

31.     Below is a small sample of what members of the putative Class have conveyed to Plaintiffs' counsel:

    a)  Putative Class member Ruth Maynor reported "dust on cars & kids toys… the dust covers everything. After my kids play outside and come in I can smell the metal in their hair and clothes".

    b)  Putative Class member Emilia Guzman reported "foul odors like rotten burnt oils and the forever dust on walls furniture, drapes, etc.".

    c)  Putative Class member Joseph Zent reported the following with regard to dust and soot: "If you wash your car, 12 hours later it looks like it's been a week. When you dust your home, within 36 hours it looks like you haven't dusted in over a month".

### *Steel Facility Complaints and Inspections*

32.     The Defendant's well-documented pattern of failing to control the Steel Facility's emissions is further demonstrated by the following:

    a)  Since 2018, over 70 air particulate and/or odor complaints have been made to the Michigan Department of Environment, Great Lakes, and Energy (the "**EGLE**"), which handles, among other things, air quality monitoring, permitting, and enforcement for the State of Michigan. At least 18 complaints were made following

the Defendant's March 2020 acquisition of AK Steel. The complaints include, but are not limited to:

    i. On July 26, 2020, a caller reported "thick black smoke coming from [the Steel Facility]… the smoke is like black dust, not vapor, that settles around the surrounding neighborhood".

    ii. On February 22, 2020, a caller reported "a strong odor of rotten eggs and/or a sewage smell in her neighborhood. The odor is coming into the house and making her nauseated. Not out of the ordinary".

    iii. On January 23, 2020, caller reported fallout on her vehicle. "It is a heavy amount of fallout; light gray or brown in color."

    iv. On January 20, 2020, a caller complained about odors "that smell like rotten egg" and stated that the Steel Facility has "black smoke that comes out of the stacks in the middle of the night".

    v. On October 20, 2019, a caller complained about "grey white dust debris all over home, yard, and cars in the area".

b) The EGLE has issued numerous Violation Notices to the Defendant in relation to fugitive emissions from the Steel Facility, including the following:

    i. On July 2, 2019, EGLE detected fallout beyond the facility's property line, attributable to the facility, of sufficient magnitude as to constitute an unreasonable interference with the comfortable enjoyment of life and property;

    ii. On November 18, 2019, stack test results indicated Pb (lead) emissions in the amount of 0.095 pounds per hour ("**pph**"), exceeding the permitted 0.067 pph; and stack test results indicated Mn (manganese) emissions in the amount of 0.23 pph, exceeding the permitted 0.10 pph;

    iii. Also on November 18, 2019, EGLE detected fallout beyond the facility's property line, attributable to the facility, of sufficient magnitude as to constitute an unreasonable interference with the comfortable enjoyment of life and property. EGLE also determined that the Defendant failed to water the kish pots for a minimum of 24 hours on 4 days between Dec. 28, 2018 and Apr. 8, 2019;

    iv. On November 25, 2019, EGLE detected fallout beyond the facility's property line, attributable to the facility, of sufficient magnitude as to

      constitute an unreasonable interference with the comfortable enjoyment of life and property;

  v. On November 26, 2019, stack test results indicated Pb (lead) emissions in the amount of 0.158 pounds per hour ("pph"), exceeding the permitted 0.067 pph; and stack test results indicated Mn (manganese) emissions in the amount of 0.16 pph, exceeding the permitted 0.10 pph;

  vi. On December 26, 2019, EGLE detected moderate to strong (level 3 and 4) blast furnace slag pits odors observed emitting from the facility and impacting nearby neighborhoods. It was determined that these odors constituted an unreasonable interference with the comfortable enjoyment of life and property;

  vii. On January 13, 2020, EGLE issued a Second Violation Notice due to the Defendant's response to the Nov. 25, 2019 Violation Notice being inadequate;

  viii. On January 28, 2020, EGLE issues a Second Violation Notice due to the Defendant's failure to respond to the Dec. 26, 2019 Violation Notice;

  ix. On March 4, 2020, EGLE detected moderate to strong (level 3 and 4) blast furnace slag pit and sulfur odors observed emitting from the facility and impacting nearby neighborhoods. It was determined that these odors constituted an unreasonable interference with the comfortable enjoyment of life and property;

  x. On March 16, 2020, stack test results indicated Pb (lead) emissions in the amount of 0.123 pounds per hour ("pph"), exceeding the permitted 0.067 pph; and stack test results indicated Mn (manganese) emissions in the amount of 0.18 pph, exceeding the permitted 0.10 pph. EGLE also detected multiple and continuous visible emissions exceeding the 20% 6-minute average opacity limit in every quarter from 2015 through 2019, violating applicable rules and law;

  xi. On July 15, 2020, EGLE determined that in the 1st quarter of 2020, 71 exceedances of the 20% 6-minute average opacity limit occurred, contrary to applicable rules and law;

  xii. On January 5, 2021, EGLE determined that in the 3rd quarter of 2021, 29 exceedances of the 20% 6-minute average opacity limit occurred, contrary to applicable rules and law. It is further noted that from the 4th quarter of 2015 through the 1st quarter of 2020, there have been multiple and continuous emissions of this nature.

      c)    There have been multiple media reports regarding emissions from the Steel Facility.

### *Steel Facility Emissions and Defendant's Liability*

33. The Steel Facility has emitted, and continues to emit, preventable fugitive noxious odors, dust, and air particulates that are flagrant beyond the bounds of its property.

34. The noxious odors, dust, and air particulate emissions are offensive to the Plaintiffs and putative Class Members and would be offensive to reasonable people of ordinary health and sensibilities.

35. The noxious odors, dust, and air particulate emissions have caused property damage and substantially interfered with the abilities of the Plaintiffs and the putative Class to reasonably use and enjoy their homes and properties.

36. The invasion of the Plaintiffs' and putative Class' properties by noxious odors, dust, and particulate emissions has reduced the values of those properties.

37. The Plaintiffs and the putative Class are a limited subset of individuals in Wayne County and the Class Area, which includes only owners/occupants and renters of residential properties who live within the Class Area and fit within the Class definition.

38. Members of the public including, but not limited to, businesses, employees, commuters, tourists, visitors, minors, customers, clients, students, and patients have been harmed by the fugitive emissions from the Steel Facility into public spaces. However, unlike the Plaintiffs and the putative Class, members of the public who are outside of the Class definition have not suffered damages in the form of diminished property values and/or the loss of use and enjoyment of their private property.

39. The Defendant knew about its substantial odors, dust, and air particulate emissions through numerous complaints, warnings, Violation Notices, civil penalties, and media attention throughout Wayne County.

40. The Defendant intentionally, knowingly, recklessly, willfully, and/or negligently failed to properly construct, maintain, and/or operate the Steel Facility. They caused a physical invasion of the Plaintiffs' and putative Class' properties by noxious odors, dust, and air particulate emissions on frequent, intermittent, and reoccurring occasions too numerous to list individually.

41. The Defendant is vicariously liable for all damages suffered by the Plaintiffs and the putative Class that were caused by the Defendant's employees, representatives, and agents, who, in the course and scope of their employment, created, allowed, or failed to correct the deficiencies which caused noxious odors, dust, and air particulate emissions to physically invade the Plaintiffs' and putative Class' properties.

## CLASS ALLEGATIONS

A. **Definition of the Class**

42. The Plaintiffs bring this action individually and on behalf of all persons that the Court may determine appropriate for class certification, pursuant to Fed. R. Civ. P. 23 (the "**Class**" or "**Class Members**"). The Plaintiffs seek to represent a Class of persons preliminarily defined as:

> **All owner/occupants and renters of residential property residing within one and a half (1.5) miles of the Steel Facility's property boundary.**

The definitional boundary is subject to modification as discovery discloses the location of all Class Members. The Plaintiffs reserve the right to propose one or more sub-classes if discovery reveals that such sub-classes are appropriate.

43. This case is properly maintainable as a class action pursuant to and in accordance with Fed. R. Civ. P. 23 in that:

   a) The Class, which includes hundreds of members, is so numerous that joinder of all Class Members is impracticable;

   b) There are substantial questions of law and fact common to the Class, including those set forth in greater particularity herein;

  c)  Questions of law and fact, such as those enumerated below, which are common to the Class, predominate over any questions of law or fact affecting only individual members of the Class;

  d)  The claims of the representative party are typical of the claims of the Class;

  e)  A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

  f)  The relief sought in this class action will effectively and efficiently provide relief to all members of the Class;

  g)  There are no unusual difficulties foreseen in the management of this class action; and

  h)  The Plaintiffs, whose claims are typical of those of the Class, through their experienced counsel, will zealously and adequately represent the Class.

### B. Numerosity

44. There are hundreds of residential households within the Class Area. Accordingly, the Class consists of thousands of members, and therefore the members of the Class are so numerous that joinder of all parties is clearly impracticable.

45. The prosecution of separate lawsuits by Class Members would risk inconsistent or varying adjudications. Class-wide adjudication of these claims is, therefore, appropriate.

### C. Commonality

46. Numerous common questions of law and fact predominate over any questions affecting individual Class Members, including but not limited to the following:

  a)  Whether and how the Defendant wrongfully, intentionally, knowingly, recklessly, negligently, and/or grossly failed to construct, maintain, and operate the Steel Facility, causing noxious odors, dust, and air particulates to invade the Plaintiffs' properties;

  b)  Whether the Defendant owed any duties to the Plaintiffs;

  c)  Which duties the Defendant owed to the Plaintiffs;

  d)  Which steps the Defendant has and has not taken in order to control the emission noxious odors, dust, and air particulates through the design, operation, and maintenance of the Steel Facility;

e) Whether the Defendant met the standard of care with respect to its operation, design, and maintenance of the Steel Facility;

f) Whether and to what extent the Steel Facility's fugitive noxious odors, dust, and air particulates were dispersed over the Class Area;

g) Whether it was reasonably foreseeable that the Defendant's failure to properly design, maintain, and operate the Steel Facility would result in an invasion of the Plaintiffs' property interests;

h) Whether the degree of harm suffered by the Plaintiffs and the Class constitutes a substantial annoyance or interference with their use and enjoyment of their properties; and

i) The proper measure of damages incurred by the Plaintiffs and the Class.

### D. Typicality

47. The Plaintiffs have the same interests in this matter as all other members of the Class and their claims are typical of the claims of all members of the Class. If brought and prosecuted individually, the claims of each Class Member would require proof of substantially the same material and substantive facts, utilize the same complex evidence (including expert testimony), rely upon the same legal theories, and seek the same type of relief.

48. The claims of the Plaintiffs and the other Class Members have a common cause and their damages are of the same type. The claims originate from the same failure of the Defendant to properly construct, maintain, and/or operate the Steel Facility.

49. All Class Members have suffered injury in fact as a result of the invasion of their properties by noxious odors, dust, and air particulates emitted by the Defendant's Steel Facility. The noxious odors, dust, and air particulates interfere with their ability to use and enjoy their homes and have diminished their property values.

### E. Adequacy of Representation

50. The Plaintiffs' claims are sufficiently aligned with the interests of the absent Class Members to ensure that the Class' claims will be prosecuted with diligence and care by the

Plaintiffs as representatives of the Class. The Plaintiffs will fairly and adequately represent the interests of the Class and they do not have interests adverse to the Class.

51. The Plaintiffs have retained the services of counsel who are experienced in complex class action litigation, and in particular class actions stemming from invasions of private property by industrial and commercial emissions, including the emission of noxious odors, dust, and air particulates. Plaintiffs' counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent the Plaintiffs and all absent Class Members.

### F. Class Treatment is the Superior Method of Adjudication

52. A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

  a) Individual claims by the Class Members would be impracticable as the costs of pursuit would far exceed what any one Class Member has at stake;

  b) Individual claims by Class Members would create a risk of inconsistent or varying adjudications, which would present the Defendant with incompatible standards of conduct;

  c) Individual claims by individual Class Members would create a risk of adjudications which would, as a practical matter, be dispositive of the interests of other individuals who are not parties to the adjudications, or substantially impair or impede their ability to protect and pursue their interests;

  d) Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class Members are unlikely to have an interest in separately prosecuting and controlling individual actions;

  e) In view of the complexity of the issues and the expenses of litigation, the separate claims of individual Class Members are likely insufficient in amount to support the costs of filing and litigating separate actions;

  f) The Plaintiffs seek equitable relief relating to the Defendant's common actions and failures to act, and the equitable relief sought would commonly benefit the Class as a whole;

  g) The concentration of litigation of these claims in one action will achieve efficiency and promote judicial economy; and

  h) The proposed class action is manageable.

## CAUSE OF ACTION I
### PRIVATE NUISANCE

53. The Plaintiffs restate the allegations of this Complaint as if fully restated herein.

54. The Defendant owed, and continues to owe, a duty to the Plaintiffs and to the Class to prevent and abate the unreasonable interference with, and the invasion of, their private property interests.

55. The fugitive noxious odors, dust, and air particulates which entered the Plaintiffs' and Class' properties originated from the Steel Facility, which was improperly and unreasonably constructed, maintained, and/or operated by the Defendant.

56. The fugitive noxious odors, dust, and air particulates invading the Plaintiffs' and Class' properties are indecent and offensive to people with ordinary health and sensibilities, and they obstruct the free use of their properties so as to substantially and unreasonably interfere with the enjoyment of life and property. This includes but is not limited to:

   a) Forcing the Plaintiffs and Class Members to remain inside their homes and forego the use of their yards, porches, and other spaces, and to generally refrain from outdoor activities;

   b) Causing the Plaintiffs and Class Members to keep their doors and windows closed when they would otherwise have them open;

   c) Depriving the Plaintiffs and Class Members of the value of their homes and properties; and

   d) Causing the Plaintiffs and Class Members embarrassment, inconvenience, and discomfort including, but not limited to, creating a reluctance to invite guests to their homes and preventing the Plaintiffs and Class Members from utilizing the outdoor areas of their respective properties.

57. The Plaintiffs' and Class' properties are situated in such proximity to the Defendant's Steel Facility as to constitute "neighboring" properties, in that they are near enough to be impacted by the tangible effects of noxious odors and airborne dust and particulates emitted from the Steel Facility.

58. By constructing and then failing to reasonably repair, maintain, and/or operate the Steel Facility, thereby causing noxious odors, dust, and air particulates to physically invade the Plaintiffs' and Class' properties, the Defendant intentionally, knowingly, recklessly, and/or negligently created a nuisance that substantially and unreasonably interferes with the Plaintiffs' and Class' properties.

59. As a foreseeable, direct, and proximate result of the forgoing misconduct of the Defendant, the Plaintiffs and Class suffered damages to their properties as alleged herein.

60. The Plaintiffs and Class Members did not consent to the invasion of their properties by the Defendant's fugitive noxious odors, dust, and air particulates, which is ongoing and constitutes a nuisance.

61. Any social utility that is provided by the Steel Facility is patently outweighed by the harm suffered by the Plaintiffs and the Class, who have on frequent occasions been deprived of the full use and enjoyment of their properties and have endured substantial loss in the use and value of their properties.

62. The Defendant's substantial and unreasonable interference with the Plaintiffs' and Class' use and enjoyment of their properties constitutes a private nuisance. The Defendant is liable for all damages arising from such nuisance, including compensatory, injunctive, exemplary, and/or punitive relief.

## CAUSE OF ACTION II
## PUBLIC NUISANCE

63. The Plaintiffs restate the allegations of this Complaint as if fully restated herein.

64. The Plaintiffs and Class utilize their properties as residences and reside within the Class Area.

65. The fugitive noxious odors, dust, and air particulates that enter the Plaintiffs' and Class' properties originated from the Defendant's Steel Facility, which is in close proximity to the Class Area.

66. The unreasonable fugitive noxious odors, dust, and air particulates emitted by the Defendant's Steel Facility have been, and continue to be, dispersed across public and private land throughout the Class Area.

67. The Defendant's fugitive noxious odors, dust, and air particulate emissions have interfered with the public's right to unpolluted and uncontaminated air.

68. By failing to reasonably design, operate, repair, and maintain the Steel Facility, the Defendant has caused an invasion of the Plaintiffs' and Class' properties by fugitive noxious odors, dust, and air particulates on frequent occasions that are too numerous to individually list herein.

69. The fugitive noxious odors, dust, and air particulates invading the Plaintiffs' and Class' properties are indecent and offensive to people with ordinary health and sensibilities. They obstruct the free use of the Plaintiffs' and Class' properties so as to substantially and unreasonably interfere with the comfortable enjoyment of life and property. This includes, but is not limited to:

   a) Forcing the Plaintiffs and Class Members to remain inside their homes and forego the use of their yards, porches, and other spaces, and to generally refrain from outdoor activities;

   b) Causing the Plaintiffs and Class Members to keep their doors and windows closed when they would otherwise have them open;

   c) Depriving the Plaintiffs and Class Members of the value of their homes and properties; and

   d) Causing the Plaintiffs and putative Class Members embarrassment, inconvenience, and reluctance to invite guests to their homes.

70. As a foreseeable, direct, and proximate result of the forgoing misconduct by the Defendant, the Plaintiffs and the Class have suffered special damages to their properties as alleged herein.

71. The damages suffered by the Plaintiffs and putative Class are uniquely injurious to those parties because they suffer harm relating to the use and enjoyment of their lands and properties, and decreased property values, which are not harms suffered by the general public.

72. The general public is also impacted by the Steel Facility's fugitive noxious odors, dust, and air particulates. Many members of the general public are impacted by the fugitive emissions when they work, study, commute, shop, or engage in recreation in the Class Area, but they suffer no harm to the use and enjoyment of their land or property, or decreased property values.

73. The repeated, substantial, and unreasonable interferences with public and private rights has been documented by the EGLE, and citations have been issued for violations of applicable Michigan laws and regulations.

74. The Plaintiffs and Class Members did not consent to the invasion of their properties by the Defendant's fugitive noxious odors, dust, and air particulates, which is ongoing and constitutes a nuisance.

75. By failing to reasonably operate, repair, and/or maintain the Steel Facility so as to abate nuisances such as odors, dust, and air particulate emissions, the Defendant has acted, and continues to act, intentionally, knowingly, recklessly, and/or negligently, and with conscious disregard for public health, safety, peace, comfort, and convenience.

76. The Plaintiffs and Class suffered, and continue to suffer, harms and damages that are of a different kind and in addition to those suffered by the public at large.

77. Any social utility that is provided by the Steel Facility is patently outweighed by the harm suffered by the Plaintiffs and the Class, who have on frequent occasions been deprived of the full use and enjoyment of their properties and have endured substantial loss in the use and value of their properties.

78. The Defendant's substantial and unreasonable interference with the Plaintiffs' and Class' use and enjoyment of their properties arises from a public nuisance, from which the Plaintiffs and Class Members have uniquely suffered. The Defendant is liable to the Plaintiffs and Class Members for all damages arising from such nuisance, including compensatory, injunctive, exemplary, and/or punitive relief.

## CAUSE OF ACTION III
### NEGLIGENCE

79. The Plaintiffs restate the allegations of this Complaint as if fully restated herein.

80. The Defendant owed, and continues to owe, a duty to the Plaintiffs and to the Class to operate and maintain the Steel Facility in a reasonable manner and to reasonably prevent fugitive emissions of noxious odors, dust, and air particulates from the Steel Facility.

81. The Defendant breached its duties by negligently and improperly maintaining and operating the Steel Facility, which was a direct and proximate cause of the invasion by fugitive noxious odors, dust, and air particulates upon the Plaintiffs' and Class' homes, lands, and properties on occasions too numerous to list individually.

82. Such invasions by noxious odors, dust, and air particulates was the foreseeable result of the foregoing misconduct of the Defendant, and the Plaintiffs and Class suffered damages to their properties as alleged herein. Such damages include, but are not limited to, the loss of use and enjoyment of their properties and the diminution of property values.

83. By failing to properly maintain and operate the Steel Facility, the Defendant failed to exercise the duty of ordinary care and diligence.

84. The Defendant knowingly, recklessly, and with a conscious disregard for the rights of the Plaintiffs and Class allowed conditions to exist and perpetuate, which caused fugitive noxious odors, dust, and air particulates to physically invade the Plaintiffs' and Class' properties.

85. The Defendant's negligence was committed with a conscious indifference to the harm caused to the Plaintiffs' and Class' properties, which entitles the Plaintiffs and Class to an award for compensatory, injunctive, exemplary, and/or punitive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs, individually and on behalf of the proposed Class, pray for judgment as follows:

A. Certification of the proposed Class by order pursuant to Fed. R. Civ. P. 23;

B. Designation of the Plaintiffs as representatives of the proposed Class and designation of their counsel as Class Counsel;

C. Judgment in favor of the Plaintiffs and the Class Members as against the Defendant;

D. An award to the Plaintiffs and the Class Members for compensatory and punitive damages in an amount greater than $25,000, plus pre- and post-judgement interest;

E. An award of attorneys' fees and costs, including pre- and post-judgement interest;

F. An Order holding that the entrance of the aforementioned fugitive noxious odors, dust, and air particulates upon the Plaintiffs' and Class' properties constituted a nuisance;

G. An Order holding that the Defendant was negligent in causing fugitive noxious odors, dust, and air particulates to repeatedly invade and interfere with the Plaintiffs' and Class' private residential properties;

H. An award to the Plaintiffs and the Class Members for injunctive relief not inconsistent with the Defendant's state and federal regulatory obligations; and

I. Such further relief, both general and specific, that this Honorable Court deems just and proper.

Date: August 24, 2021                                                        Respectfully submitted,

                                                                             **LIDDLE & DUBIN, PC**
Laura L. Sheets   (P63270)
Steven D. Liddle (P45110)
Lance Spitzig     (P84988)

975 East Jefferson Avenue
Detroit, MI 48207-3101
T: (313) 392-0015
E: lsheets@ldclassaction.com

*Attorneys for the Plaintiffs*

20