## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

LOUIS CROCKER, et al.,

        **Plaintiffs,**

v.

**CLEVELAND-CLIFFS STEEL CORPORATION,**

        **Defendant.**

**Case No. 4:21-cv-11937-SDK-CI**

**Judge Shalina D. Kumar**

## DEFENDANT CLEVELAND-CLIFFS STEEL CORPORATION'S RESPONSE TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Defendant Cleveland-Cliffs Steel Corporation ("CCSC") opposes Plaintiffs' Motion for Class Certification on the grounds that Plaintiffs have failed to present any evidence of an alleged common injury to the putative Class due to alleged emissions from CCSC's steel facility (the "Facility").  In particular:

1. Plaintiffs have failed to demonstrate "commonality" as required by Rule 23(a)(2) (or "predominance" of common questions of law or fact as required by Rule 23(b)(3)) because they have not presented any competent scientific evidence of common injury.  They primarily rely on the hypothetical, canned "Preliminary Expert Report" of Dr. Mark P. Cal, who failed to perform any actual air modeling of CCSC's alleged emissions to determine the area that they likely impacted, and therefore they present no proper scientific (or even pseudo-scientific)

evidence of any alleged "commonality" on that part of the putative class members due to CCSC's alleged emissions under Rule 23(a)&(b)(3);[1]

2.  Plaintiffs further rely upon the vague, conflicting, and unverified hearsay statements of the putative class members *solicited by Plaintiffs' counsel's advertising*, which are not sufficient to demonstrate either "commonality" or "predominance" under Rule 23(a)(2) or (b)(3);

3.  The representative Plaintiffs are property *owners* and their claims are not "typical" of the claims of putative class members who (i) claim diminution in property values or (ii) are merely *renters*, as required by Rule 23(a)(3);

4.  The representative Plaintiffs have failed to demonstrate that they will fairly and adequately protect the interests of the renters in the putative class, as required by Rule 23(a)(4);

5.  Given the nature of Plaintiffs' property tort claims, the many other known sources of air contaminants in the area and CCSC's affirmative defenses, *individualized* issues predominate in this case, precluding class certification under Rule 23(b)(3); and

---

[1] Contemporaneously with this Response, Defendant CCSC has filed a separate *Daubert* motion to exclude Dr. Cal's hypothetical and unsupported "Preliminary Expert Report".

6.    Plaintiffs have failed to demonstrate that class certification of certain *issues* is appropriate under Rule 23(c)(4).

WHEREFORE, for the reasons set forth more fully in the attached Brief, Defendant CCSC asks this Court to deny Plaintiffs' Motion for Class Certification.

Dated: February 9, 2024

Respectfully submitted,

*s/Vincent Atriano*
Vincent Atriano
Danelle M. Gagliardi
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, OH 43215
Tel: (614) 365-2783
vincent.atriano@squirepb.com
danelle.gagliardi@squirepb.com

Erik D. Lange (P79166)
Squire Patton Boggs (US) LLP
4900 Key Tower
127 Public Square
Cleveland, OH 44114-1304
(216) 479-8040
erik.lange@squirepb.com

*Attorneys for Defendant Cleveland-Cliffs Steel Corporation*

**DEFENDANT CLEVELAND-CLIFFS STEEL CORPORATION'S
BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION**

## TABLE OF CONTENTS

COUNTERSTATEMENT OF ISSUES PRESENTED............................................. ii

CONTROLLING AUTHORITY............................................................ iv

INDEX OF AUTHORITIES.................................................................v

LIST OF EXHIBITS..................................................................... viii

STATEMENT OF FACTS ................................................................1

ARGUMENT ...........................................................................10

    **A.**    **Plaintiffs Have Failed to Demonstrate Compliance
          With Rule 23(a)** ...............................................................**10**

          **1.**   **Plaintiffs Have Not Demonstrated Commonality under Rule
                23(a)(2) Because There is No Showing of Common Injury to
                the Proposed Class** .....................................................**11**

          **2.**   **The Named Plaintiffs' Claims Are Not "Typical" under
                Rule 23(a)(3)**.............................................................**17**

          **3.**   **The Named Plaintiffs Have Not Demonstrated that They Will
                Fairly and Adequately Represent the Class under
                Rule 23(a)(4) .** .............................................................**18**

    **B.**    **Plaintiffs Have Failed to Establish "Predominance" and
          "Superiority" under Rule 23(b)(3)** .................................................**20**

    **C.**    **Plaintiffs Have Not Demonstrated That Certification of Class
          Issues under Rule 23(c)(4) Would be Appropriate** .......................**30**

CONCLUSION ........................................................................30

## <u>COUNTERSTATEMENT OF ISSUES PRESENTED</u>

1.  Does Plaintiffs' Motion to Certify demonstrate "commonality" of common questions of law or fact as required by Rule 23(a)(2)?

    **CCSC Answers:  No.**

2.  Does Plaintiffs' Motion to Certify demonstrate "predominance" of common questions of law or fact as required by Rule 23(b)(3)?

    **CCSC Answers:  No.**

3.  Does the hypothetical and canned "Preliminary Expert Report" of Dr. Mark P. Cal, which fails to present the results of any air dispersion modeling of CCSC's emissions whatsoever, constitute proper scientific evidence of any alleged "commonality" or "predominance" of common questions of law or fact the part of the putative class members due to such alleged emissions for purposes of class certification under Rule 23(a)&(b)(3)?

    **CCSC Answers:  No.**

4.  Are the vague, conflicting, and unverified hearsay statements of the putative class members solicited by Plaintiffs' counsel sufficient evidence alleged for "commonality" or "predominance" of common questions of law or fact on the part of the putative class members due to such alleged emissions for purposes of class certification under Rule 23(a)&(b)(3)?

    **CCSC Answers:  No.**

5.  Does Plaintiffs' Motion to Certify demonstrate that "questions of law or fact common to class members <u>predominate</u> over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," as required for class certification under Rule 23(b)(3)?

    **CCSC Answers:  No.**

6.  Does Plaintiffs' Motion to Certify demonstrate that the claims of representative Plaintiffs, who are property *owners*, are "typical" of the

claims of putative class members who claim a diminution in property values or who are merely *renters* as required by Rule 23(a)(3)?

**CCSC Answers:  No.**

7.   Does Plaintiffs' Motion to Certify demonstrate that the representative Plaintiffs will fairly and adequately protect the interests of the renters in the putative class, as required by Rule 23(a)(4)?

**CCSC Answers:  No.**

8.   Do *individualized* issues predominate in this case, due to the nature of Plaintiffs' property tort claims, the many other known sources of air contaminants in the area and CCSC's affirmative defenses, precluding class certification under Rule 23(b)(3)?

**CCSC Answers:  Yes.**

9.   Does Plaintiffs' Motion to Certify demonstrate that class certification of certain issues is appropriate under Rule 23(c)(4)?

**CCSC Answers:  No.**

10.   Have Plaintiffs demonstrated that their putative class of "[a]ll owner/occupants and renters of residential property residing within one and a half (1.5) miles of the Steel Facility's property boundary" meets the standards for class certification under Rule 23(a)&(b)(3)?

**CCSC Answers:  No.**

## <u>CONTROLLING AUTHORITY</u>

Fed. R. Civ. Pro. 23

*General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147 (1982)

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)

*Morley v. Michigan Sugar Co*., No. 354085, 2021 WL 5405867 (Mich. Ct. App. Nov. 18, 2021)

*Adams v. Cleveland-Cliffs Iron Co.*, 237 Mich. App. 51 (1999)

## <u>INDEX OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Cleveland-Cliffs Iron Co.*,
  237 Mich. App. 51 (1999) ...............................................................22

*In re Am. Med. Sys., Inc.*,
  75 F.3d 1069 (6th Cir. 1996) ...........................................................12

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997)..........................................................18, 20, 21

*Ball v. Union Carbide Corp.*,
  385 F.3d 713 (6th Cir. 2004) ...........................................................24

*In re Behr Dayton Thermal Prod., LLC*,
  No. 3:08-CV-326, 2017 WL 11690584 (S.D. Ohio Mar. 20, 2017),
  *aff'd sub nom. Martin v. Behr Dayton Thermal Prod. LLC*, 896
  F.3d 405 (6th Cir. 2018) ................................................23, 26, 28, 30

*Burkhead v. Louisville Gas & Elec. Co.*,
  250 F.R.D. 287 (W.D. Ky. 2008) ................................................13, 25

*Cahoo v. Fast Enterprises LLC*,
  508 F. Supp. 3d 138 (E.D. Mich. 2020) ......................................17, 20

*Califano v. Yamasaki*,
  442 U.S. 682 (1979).........................................................................11

*Cochran v. Oxy Vinyls LP*,
  No. 3:06CV-364-H, 2008 WL 4146383 (W.D. Ky. Sept. 2, 2008) .............13, 20

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)........................................................12, 20, 21, 26

*Daigle v. Shell Oil Co.*,
  133 F.R.D. 600 (D. Colo. 1990) .......................................................14

*Duffin v. Exelon Corp.*,
  No. CIV A 06 C 1382, 2007 WL 845336 (N.D. Ill. Mar. 19, 2007).................14

*In re Flint Water Cases,*
 558 F. Supp. 3d 459 (E.D. Mich. 2021) .......................................................26, 27

*General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147 (1982)....................11

*Isabel v. Velsicol Chem. Corp.,*
 No. 04-2297 DV, 2006 WL 1745053 (W.D. Tenn. June 20, 2006)..................19

*Martin v. Behr Dayton Thermal Products,*
 896 F.3d 405 (6th Cir. 2018) ...............................................................................23

*Morley v. Michigan Sugar Co.,*
 No. 354085, 2021 WL 5405867 (Mich. Ct. App. Nov. 18, 2021) ..............22, 23

*Norman v. FCA US, LLC,*
 No. 2:22-CV-11393-TGB-CI, 2023 WL 6388926 (E.D. Mich.
 Sept. 30, 2023)......................................................................................................25

*Olden v. LaFarge, Corp.,*
 383 F.3d 495 (6th Cir. 2004) .........................................................................27, 28

*In re OnStar Cont. Litig.,*
 278 F.R.D. 352 (E.D. Mich. 2011) ......................................................................17

*Ramik, et al. v. Darling International, Inc.,*
 No. 98-40276 (E.D. Mich. May 24, 1999) ........................................................25

*Rockey v. Courtesy Motors, Inc.,*
 199 F.R.D. 578 (W.D. Mich. 2001).....................................................................17

*Rodney v. Nw. Airlines, Inc.,*
 146 F. App'x 783 (6th Cir. 2005).........................................................................22

*Schechner v. Whirlpool Corp.,*
 No. 2:16-CV-12409, 2019 WL 4891192 (E.D. Mich. Aug. 13,
 2019) ......................................................................................................................26

*Senter v. Gen. Motors Corp.,*
 532 F.2d 511 (6th Cir. 1976) ...............................................................................18

*Sherman v. Chrysler Corp.,*
 47 F. App'x. 716, 722 (6th Cir. 2002)....................................................................9

*Sines v. Darling Ingredients Inc.,* No. CV 19-19121, 2023 WL
 3841741 (D.N.J. June 6, 2023)............................................................................19

*Snow v. Atofina Chems., Inc.*,
  Nos. 01-72648, 01-75012, 2004 WL 3768120 (E.D. Mich.
  Mar. 18, 2004)...........................................................................................23, 29

*Stanley v. U.S. Steel Co.*,
  No. 04-74654, 2006 WL 724569 (E.D. Mich. Mar. 17, 2006)..........................29

*Steering Comm. v. Exxon Mobil Corp.*,
  461 F.3d 598 (5th Cir. 2006) ...............................................................................26

*Stout v. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) ...............................................17

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)...........................................................................11, 12, 20

*Widdis v. Marathon Petroleum Company, LP*,
  No. 13-cv-12925, 2014 WL 11444248 (E.D. Mich. Nov. 18, 2014) .................27

*Williams v. Nashville Network*,
  132 F.3d 1123 (6th Cir. 1997) ...............................................................................9

## Other Authorities

Fed. R. Civ. Pro. 23....................................................................................10, 11

Fed. R. Civ. Pro. 23(a) ....................................... 10, 12, 14, 16-17, 20, 30

Fed. R. Civ. Pro. 23(a)(1) .......................................................................17

Fed. R. Civ. Pro.  23(a)(2) .......................................................................11

Fed. R. Civ. Pro. 23(a)(4) .......................................................................18

Fed. R. Civ. Pro. 23(b)........................................................................12, 20

Fed. R. Civ. Pro. 23(b)(3) ....................................... 10, 20-22, 26, 29-30

M.C.L. § 600.5805(2) ................................................................................1

## LIST OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| **A** | Docket Sheet for Case No. 21-008774-NZ |
| **B** | Steve Neavling, <u>Struggling to breathe in 48217, Michigan's most toxic ZIP code,</u> Metro Times (Jan. 8, 2020) |
| **C** | Susan Kilmer & Keisha Williams of MDEQ, <u>48217 COMMUNITY AIR MONITORING PROJECT, September 2016 - September 2017</u>, (Apr. 27, 2018) (excerpt only) |
| **D** | Summary of Varying Descriptions in Plaintiffs' Data Sheets |
| **E** | EGLE Violation Notices to Marathon Refinery dating back to 2018 |
| **F** | EGLE July 27, 2020 Enforcement Summary Report on Marathon |
| **G** | EGLE February 1, 2021 Stipulation for Entry of Final Order by Consent with Marathon |
| **H** | Eli Newman, <u>Marathon to Buyout Homes in Southwest Detroit</u>, WDET 101.9 FM (Dec. 18, 2020) |
| **I** | Deposition Transcript of Dr. Mark P. Cal |
| **J** | Expert Report of Ranjit J. Machado, P.E. |
| **K** | L. Crocker Responses to Req. for Adm. |
| **L** | D. Charles Responses to Req. for Adm. |
| **M** | J. Charles Responses to Req. for Adm. |
| **N** | Expert Witness Report of Joseph Torzewski, MAI |
| **O** | *Ramik v. Darling International, Inc.*, No. 98-40276 (E.D. Mich. May 24, 1999) |

## **STATEMENT OF FACTS**

Plaintiffs Louis Crocker and Danielle and Jason Charles allege private nuisance, public nuisance, and negligence due to alleged emissions from CCSC's steelmaking facility (formerly known as "AK Steel Dearborn Works").  *See* First Am. Class Action Cmplt., ECF No. 4.  Plaintiffs bring these claims individually and on behalf of a putative class defined as "[a]ll owner/occupants and renters of residential property residing within one and a half (1.5) miles of" CCSC's Facility.  *Id*. at ¶42, PageID.48.  Plaintiffs allege that CCSC's operations have "caused a physical invasion of the Plaintiffs' and putative Class' properties by noxious odors, dust, and air particulate".  *Id*. at ¶40, PageID.48.

Plaintiffs originally filed their claims in Wayne County Circuit Court on July 20, 2021, and this action was subsequently removed to this Court by Defendant.  *See* Docket Sheet for Case No. 21-008774-NZ, **Exhibit A** hereto.  Plaintiffs' claims are solely for *property damage*, and Plaintiffs do not allege any personal injuries.  Their claims are subject to the three-year statute of limitations in M.C.L. § 600.5805(2).  Thus, any such claims which "first accrued" prior to 3 years before the suit was filed (i.e., *prior to July 21 2018*) are time-barred.

This putative class area lies within a heavily industrialized area of Dearborn and Southwest Detroit.  The putative class area includes a section of zip code 48217, which has been dubbed "Michigan's Most Polluted ZIP Code."[2]

A 2020 article[3] noted the many industrial emitters of air contaminants in this ZIP code: "The community is inundated with a toxic stew of chemicals wafting from steel mills, coal-fired power plants, gas flares, billowing smokestacks, towering piles of coal and petroleum coke, a salt mine, wastewater treatment plant, and one of the nation's largest oil refineries."

That article goes on to address the primary polluter in the ZIP code, the Marathon Petroleum Refinery:

> But nothing was more impactful and encroaching than Marathon, the only oil refinery in Michigan, which dramatically increased in size for five decades.  The refinery now sprawls across 250 acres in 48217 and produces up to 140,000 barrels of oil a day, pumping out hundreds of tons of nitrous oxide, sulfur dioxide, and carbon monoxide, according to EPA records.…
>
> The acrid smell emanating from the plant is so intense that residents often feel nauseated inside their homes with the windows shut.

*Id*.

---

[2]  *See* Tina Lam, 48217: Life in Michigan's Most Polluted ZIP Code, Detroit Free Press (June 20, 2010), formerly available at http://www.freep.com/article/20100620/NEWS05/6200555/1318/48217-Life-in-Michigans-most-polluted-ZIP-code.

[3]  Steve Neavling, Struggling to breathe in 48217, Michigan's most toxic ZIP code, Metro Times, (Jan. 8, 2020), https://www.metrotimes.com/news/struggling-to-breathe-in-48217-michigans-most-toxic-zip-code-23542211 at p. 5 (**Exhibit B** hereto).

An April 27, 2018 Michigan Department of Environmental Quality report[4] contained a detailed map of air emission sources in the Southwest Detroit area, illustrating <u>29</u> "large air emission sources" in the area subject to air reporting requirements. The Marathon Refinery (numbers 17a and 17b) is located directly southeast of CCSC's facility (denoted as "AK Steel," number 23) and squarely within ZIP code 48217. Yet Plaintiffs' Motion to Certify conveniently omits any consideration of Marathon or the 27 other "large emission sources" in the area in addition to CCSC.

Plaintiffs rely on the unverified statements of putative Class members presented as Ex. 8 to the Motion to Certify. ECF No. 58-8. However, these so-called "data sheets" are nothing more than the putative Class members' unverified responses to _solicitation letters_ from Plaintiffs' counsel. *See id.*, PageID.1037. The solicitation letters themselves are clearly labeled "**ADVERTISEMENT ONLY**" at the top. *Id*. The letters are very leading, and suggest that "you may have experienced odors and/or fallout from [the AK Steel] facility." *Id*. They also tantalize the class members by stating that these issues "may entitle you to compensation." *Id*.

---

[4]  Susan Kilmer & Keisha Williams, the Michigan Department of Environmental Quality (now known as the Department of Environment, Great Lakes, and Energy or "EGLE"), <u>48217 COMMUNITY AIR MONITORING PROJECT, September 2016 – September 2017</u>, Apr. 27, 2018 at p. 4 (except attached as **Exhibit C**).

Despite such blatant coaching by Plaintiffs' counsel, several of the putative class members noted that *Marathon* appears to be the actual source of the alleged dust and odors:

- Annie Seaman of 1030 Patricia Street noted that the source of odors and/or dust, she was "not sure of whether AK [or] **Marthorn" (sic)** (ECF No. 58-8, PageID.1078);

- Cara Mae Wendling of 9216 Mason Place responded that she has "noticed odors but thought it was from **Marathon**. You can see the air pollution" (*Id.*, PageID.1090);

- Joseph Zendt of 2390 Woodmere stated that he has noticed odors and dust/fallout "as well as from the **Marathon refinery**." (*Id.*, PageID.1096).

Moreover, the allegations against CCSC in these so-called "data sheets" are vague and conflicting. *See* **Exhibit D** hereto (summary of varying descriptions in data sheets). The putative class members describe the alleged odors, dust, or their residues in various ways, suggesting that they are from *different sources*, and lack any "commonality".[5] These so-called "data sheets" do not contain any actual scientific data, nor do they disclose how the respondents supposedly determined the likely sources of alleged odors or dust on their properties, since they presumably lack the expert qualifications to do so. In the vast majority of cases, these data sheet questionnaires do not establish that the class members experienced alleged odors or

---

[5] Two residents did not indicate the presence of any odors or dust at all (Neilson, ECF No. 58-8, PageID.1062; Onedo, PageID.1066-67). Another indicated no odors (Makled, PageID.1046), while two others indicated no dust (Kennedy, PageID.1043; Mohamed, PageID.1057) and a third indicated they were "unsure" of the alleged dust (Thacker, PageID.1087). *See* Ex. D. These "data sheets" alone demonstrate the lack of "commonality" with respect to the class's claims.

dust within the statutory period (i.e., since July 21, 2018) – most of the respondents have resided in their homes for much longer than three years (*see, e.g.*, Barcenas, ECF No. 58-8, PageID.1004 (60 years); Dickinson, *id.*, PageID.1025 (51 years); Guzman, *id.*, PageID.1035 (50 years); etc.).

The allegations against Marathon in the data sheets are not surprising, because the Marathon Refinery has received at least <u>nine</u> Violation Notices from EGLE dating back to 2018 (*see* **Exhibit E** hereto), including the following:

|  | Date | NOV Issued to: | Relating to: |
|---|---|---|---|
| 1. | Nov. 8, 2018 | Marathon Petroleum | Hydrogen sulfide ("H$_2$S") emissions |
| 2. | Dec. 20, 2018 | Marathon Petroleum | Particulate matter emissions |
| 3. | Feb. 22, 2019 | Marathon Petroleum | **Nuisance odors beyond the facility's property line, attributable to the facility**, of sufficient intensity and duration so as to constitute an unreasonable interference with the comfortable enjoyment of life and property |
| 4. | April 12, 2019 | Marathon Petroleum | Second Violation Notice to Marathon due to inadequate response to the Feb. 22, 2019 Violation Notice |
| 5. | Oct. 7, 2019 | Marathon Petroleum | Visible emissions |
| 6. | Dec. 9, 2019 | Marathon Petroleum | **Nuisance odors** - Moderate to Strong (Level 3 and 4) **asphalt odors** observed emitting from the facility and impacting nearby neighborhoods |
| 7. | Jan. 6, 2020 | Marathon Petroleum | **Nuisance odors** - Moderate to Strong (Level 3 and 4) **refinery, sulfur, and sewage sludge-type odors** observed emitting from the facility and impacting nearby neighborhoods |
| 8. | Dec. 3, 2020 | Marathon Petroleum | Particulate matter emissions |
| 9. | Sep. 27, 2022 | Marathon Petroleum | Particulate matter emissions |

In addition, in a July 27, 2020 Enforcement Summary Report on Marathon, EGLE noted that its "staff observed nuisance odors" during several months in 2019, consisting of "sulfur odors," "asphalt odors" and "sewage sludge odors."  *See* **Exhibit F** hereto at p. 2.  These are the *same types of odors* reported in the so-called

"data sheets." *See* Ex. D.  The report further noted that "[t]he H$_2$S [hydrogen sulfide, which smells like rotten eggs] emitted from the broken pipe was the likely cause of the nuisance odors."  Ex. F at p. 2.

As a result of the above-noted odor and other violations, Marathon entered into a February 1, 2021 Stipulation for Entry of Final Order by Consent with EGLE, under which it agreed to an extensive Compliance Program (p. 3), paid a settlement amount of $81,853 (p. 10) and implemented a SEP at a cost of $282,000 (p. 16).  *See* **Exhibit G** hereto.  The Consent Order is in effect for five years, until 2026.  *Id.* at p. 11.

Additionally, to "remedy concerns over longstanding environmental hazards in the area," Marathon Petroleum committed $5 million to buy nearby residential properties in 2020.  *See* **Exhibit H** hereto.[6]

Plaintiffs also make the spurious claim that "surrounding residents submitted more than **75** odor and dust complaints to the EGLE **where the sources of such nuisance conditions was confirmed to be Defendant's facility**."  ECF No. 58, PageID.667 (emphases in original).  In support of this assertion, they cite "Community Complaints" attached to their Motion as Exhibit 1.  ECF No. 58-1. However, they blatantly mischaracterize these alleged Community Complaints.

---

[6] *See* Eli Newman, <u>Marathon to Buyout Homes in Southwest Detroit</u>, WDET 101.9 FM (Dec. 18, 2020), https://wdet.org/2020/12/18/marathon-to-buyout-homes-in-southwest-detroit/ (**Exhibit H** hereto).

Plaintiffs' Exhibit 1 consists of <u>only 13</u> separate alleged incidents,[7] spanning March 2021 to December 2022. The "caller name" and "address" were redacted from 10 reports, making it impossible to determine if the residents were allegedly affected at their residence or merely while driving by.

More importantly, in the vast majority, EGLE either failed to confirm that the source was CCSC or determined that <u>no violation</u> had occurred. *See, e.g.,* PageID.691 ("I did not observe odors in the complainant's neighborhood during the investigation, nor were slag processing odors observed … directly downwind of the property line of Cleveland Cliffs"); PageID.694 ("AQD staff … did not observe any more visible emissions from the bleeder valves…. AQD staff has also been in the area … performing surveillance and no emissions from the bleeders have been observed."); PageID.695 ("air quality regulations allow for some release of particulate emissions, and … they do not necessarily constitute a violation of opacity standards if emitted for short durations."); PageID.702 ("It's unknown where the odor is coming from specifically, but it is suspected to be coming from a nearby steel plant … **or a nearby Marathon Refinery**."); PageID.707 ("No emissions were observed…. I did not observe any evidence of fallout…. **[I]t appears unlikely that Cliffs would be the source of this complaint**."); PageID.708 (reported "white smoke" was "likely steam" which "would be normal operation and not a violation

---

[7] One of these was reported by CCSC itself, and involved a gas release which "lasted one to two minutes." ECF No. 58-1, PageID.693. No odors or dust were noted.

of any opacity or emission standards"); PageID.715 ("odors were characteristic of slag processing performed **by Edw. C. Levy Co**." but "AQD staff determined there was **not a violation** of Rule 901 at this time."); PageID.717 ("I did not observe any unusual emissions coming from any of the processes at Cleveland-Cliffs or Levy, only normal steam plumes."); PageID.718 ("based on wind direction the complainant was not downwind of Levy/Cleveland Cliffs"); PageID.719 ("**Levy's operations** … is suspected as the most likely source of the odors; however, I did not observe odors at the complainant's residence") (bold emphases added).

Thus, Plaintiffs' assertion that all of these complaints involved "nuisance conditions … confirmed to be Defendant's facility" is blatantly untrue.  In fact, Plaintiffs' Exhibit 1 demonstrates the notorious unreliability of unverified citizen reports (especially in a highly industrialized area), and that such subjective perceptions and suspicions are often mistaken.

Plaintiffs also present 11 Violation Notices issued to CCSC from 2019 to 2023.  *See* ECF No. 58-2.  However, Plaintiffs once again blatantly mischaracterize these Violation Notices, falsely claiming that they were issued "for spreading odors and dust."  *See* ECF No. 58, PageID.667.  In actuality, **<u>none</u>** of these Violation Notices allege any "odors" whatsoever, and they allege <u>only two instances</u> of "fallout" over these five years – both in 2019.  *See* ECF No. 58-2, PageID.732, 736.

The rest relate to CCSC's stack tests or the parameters of its pollution control equipment. *See id.*, *passim*.[8]

Nor does the First Material Modification to the Consent Decree agreed to by CCSC establish any commonality on the part of the putative class. *See* ECF No. 58, PageID.667-8; ECF No. 58-4.  The purpose of this Consent Decree modification was to resolve disputed federal and state pollution control claims (*see* PageID.814, 840), "without admission of any issue of fact or law".  *Id.*, PageID.819.  The Modification required CCSC to rebuild its electrostatic precipitator (ESP) to address air quality concerns, at a cost of approximately $100 million.  *Id.*, PageID.814.  As a condition of the Modification, CCSC agreed to perform a "supplemental environmental project" ("SEP") to provide "one air purifier unit to each residential dwelling in South Dearborn."  *Id.*, PageID.818.

CCSC, working with the Concerned Residents for South Dearborn ("CRSD"), "identified approximately 1,117 residential dwellings (e.g., houses and apartments) in South Dearborn for which Defendant will purchase and deliver air purifier units under the Project."  ECF 58-5, PageID.952.  "The Project will benefit residents of

---

[8]  In any event, such Agency determinations would not be admissible in a civil judicial proceeding due to Rule of Evidence 403.  *See, e.g., Williams v. Nashville Network*, 132 F.3d 1123, 1128 (6th Cir. 1997) (probable cause determination of the EEOC excluded under Evid. R. 403 because "its probative value is outweighed by the risk of unfair prejudice, and be [sic] misleading an[d] possibly misleading and confusing to this jury of what a governmental agency made a determination, an administrative reconciliation proceedings versus the standard of proof in this case."); *Sherman v. Chrysler Corp.*, 47 F. Appx. 716, 722 (6th Cir. 2002) ("An EEOC letter of violation is presumptively inadmissible 'because it "suggests that preliminarily there is reason to believe that a violation has taken place" and therefore, results in unfair prejudice to defendant.'"; citation omitted).

South Dearborn by improving indoor air quality through the capture of <u>indoor</u> airborne particles such as dust, pollen, pet dander and mold spores." *Id*. (emphasis added).  The area of South Dearborn eligible for the SEP is shown on Plaintiffs' Exhibit 5 (ECF No. 58-5, PageID.954).

As is readily apparent by Plaintiffs' Exhibit 6 (ECF No. 58-6, PageID.956), this "Air Purifier Consent Decree Area" (shaded in maroon) comprises only a portion of the putative class area.  It consists of only "1,117 residential dwellings," whereas Plaintiffs claim that the putative class area includes "over 5,400 households."  ECF No. 58, PageID.675.  The SEP area cannot possibly demonstrate any "commonality" over the entire putative class area.[9]  Of course, none of the named Plaintiffs reside in the "Air Purifier Consent Decree Area."  Consequently, the more limited "Air Purifier Consent Decree Area" cannot be certified as a class under Rule 23.

The contributions of the Marathon Refinery and other industrial sources in the area, which are a matter of public record, should be taken into account by this Court in assessing whether Plaintiffs have demonstrated "commonality" under Rule 23(a) or "predominance" of common issues under Rule 23(b)(3).

## ARGUMENT

### A.    Plaintiffs Have Failed to Demonstrate Compliance With Rule 23(a).

---

[9]  Moreover, the putative class area would <u>leave out</u> at least four "data sheet" respondents who apparently reside outside the red line.  *See* ECF No. 58-6, PageID.956.

### 1.    Plaintiffs Have Not Demonstrated Commonality under Rule 23(a)(2) Because There is No Showing of a Common Injury to the Proposed Class.

The U.S. Supreme Court has stated that a "class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (*quoting Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979)). "In order to justify a departure from that rule, 'a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Id*. at 348-49 (citation omitted).

Rule 23(a)(2) requires "commonality—the rule requiring a plaintiff to show that 'there are questions of law or fact common to the class.'" *Id*. at 349. "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Id*. at 349-50 (*quoting General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 (1982)). "That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350.

"Rule 23 does not set forth a mere pleading standard." *Id*. "A party seeking class certification must affirmatively demonstrate his compliance with the Rule— that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id*. "'[S]ometimes it may be

necessary for the court to probe behind the pleadings before coming to rest on the certification question,'" (*quoting Falcon*, 457 U.S. at 160) "and that certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Id.* at 350-51 (*quoting Falcon*, 457 U.S. at 161); *accord In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1078-79 (6th Cir. 1996); *see also Falcon* at 160 ("[A]ctual, not presumed, conformance with Rule 23(a) remains ... indispensable"). "Frequently ... 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Wal-Mart Stores*, 564 U.S. at 351; *see also id.* at 356 (class certification reversed because statistical expert evidence put forth by plaintiffs was "insufficient to establish that [plaintiffs'] theory can be proved on a classwide basis.").

It is Plaintiffs' burden to "'affirmatively demonstrate compliance' with Rule 23." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (citation omitted). Plaintiffs must also "satisfy through *evidentiary proof* at least one of the provisions of Rule 23(b)." *Id.* (emphasis added).

Plaintiffs' Motion to Certify fails to demonstrate compliance with the four Rule 23(a) requirements of numerosity, commonality, typicality and adequacy of representation. As the U.S. Supreme Court recognized in *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n. 3 (1982):

> The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical

and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.  Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest.

Many courts have declined to certify classes with proposed geographic boundaries where "no evidence establishes a connection between defendants' conduct and the proposed class boundaries." *Burkhead v. Louisville Gas & Elec. Co.*, 250 F.R.D. 287, 292 (W.D. Ky. 2008) (citations omitted).  In *Burkhead*, the Court noted that it "has repeatedly pressed for an evidentiary relationship between the geographic boundaries of the proposed class definition and the alleged exposure zone of pollution."  *Id*.  It found that plaintiffs "offer no evidence whatsoever that the airborne contaminants might have spread in all directions from [defendant's] facility for a distance of up to two miles."  *Id*.  The Court denied class certification, finding that plaintiffs' "request for class certification contains a startling and near-total lack of evidence linking the fallout and/or odors about which Plaintiffs complain to the substances that [defendant] emits".  *Id.* at 293.

In *Cochran v. Oxy Vinyls LP*, No. 3:06CV-364-H, 2008 WL 4146383 (W.D. Ky. Sept. 2, 2008), the Court denied certification of a class alleging invasion of their properties by "particulate matter ('fallout') and noxious odors" from the defendant's resin plant.  Despite the expert report of an industrial hygienist that contained the incomplete results of a single dust sample (*id*. at *2-3), the Court found that

- 13 -

"Plaintiffs offer no meaningful evidence that airborne contaminants *from [defendant]* spread in a uniform fashion in all directions from Defendants' facility for a distance of up to two miles, or really that they spread from [defendant] at all." *Id.* at \*6. The Court noted that "simply filing a document styled as an expert report does not automatically establish 'a scientific basis for [a] class definition.'" *Id.* at \*7. The Court found that "[c]ertainly the broadly drawn class boundaries call into question Plaintiffs' argument that a single source of conduct is applicable to each class member. After all, multiple industrial facilities emit carbonized material within the proposed class boundary and that some of the proposed class members live closer to facilities other than [defendant]." *Id.* at \*8. The Court noted that "the presence of multiple industrial facilities in the vicinity strongly suggests that 'no single proximate cause equally applies to each potential class member and each defendant.'" *Id.* at \*9 (citations omitted). The Court found that "the complaints of several individuals located in relatively geographically-confined sections of the proposed class area about heterogenous substances and odors" and defendant's emission records "are insufficient [to meet Rule 23(a)'s requirements] standing alone." *Id.* at \*6.

*See also Duffin v. Exelon Corp.*, No. CIV A 06 C 1382, 2007 WL 845336, at \*4 (N.D. Ill. Mar. 19, 2007) (declining to certify class where "[p]laintiffs do not cite authority supporting certification of a geographically-based, 6,500 member class where there is no evidence of area-wide contamination."); *Daigle v. Shell Oil Co.*,

- 14 -

133 F.R.D. 600, 602-03 (D. Colo. 1990) (rejecting geographically described class
area where plaintiffs "arbitrarily have drawn lines on a map" and failed to "identify
any logical reason relating to the defendants' activities").

Similarly, Plaintiffs' putative class area was arbitrarily drawn by Plaintiffs'
counsel. Plaintiffs' expert, Dr. Mark P. Cal, testified in deposition that the class area
boundary (a 1.5-mile radius around CCSC's facility) "was given to [him]" by
Plaintiffs' counsel and was not based upon any air modeling whatsoever:

> Q. And I want to get this absolutely clear.· **This map is not based on
> any air modeling that you conducted, correct**?
>
> A. Correct.
>
> Q. And it's **based solely on the unverified allegations in the
> amended complaint, correct**?
>
> A. **Correct**.
>
> Q. And based on your preliminary report analysis, is there any basis for
> assigning this area as the class area?
>
> ….
>
> A. That's outside the scope -- scope of the report and outside my
> expertise.· **I don't have anything to do with assigning class [areas].**
>
> Q. And did you just assume this class area based upon the statements
> made in the amended complaint?
>
> ….
>
> A. **So the class area was given to me**….
>
> Q. Okay.· And you say the class area was given to you?
>
> A. Well, on the map that you're showing right now, yes.
>
> Q. Okay.· And did you assume that the class area as depicted on this
> map is correct?
>
> ….
>
> A. Yeah.· So it's outside the scope.· And as I mentioned, **I have
> nothing to do with the assignment of the class area**.
>
> Q. And you're offering no opinions in your preliminary report to
> support the plaintiffs' allegation that this is an appropriate class area; is that correct?
>
> ….

> A.     All I'm doing is stating that AERMOD would work within a 1.5 mile radius.· **I'm not stating that the class area is appropriate. I don't know.**

*See* **<u>Exhibit I</u>** hereto, pp. 90:21 – 92:12 (emphases added).

As stated in the rebuttal expert report of CCSC's air modeling expert, Ranjit J. Machado, P.E. of Ramboll Consulting:

> Dr. Cal does not describe any modeling or monitoring conducted to define the class area.  Dr. Cal has not investigated CCSC's historical emissions, emission source parameters, or local meteorology and has provided no analysis of the impact of the CCSC Facility's alleged emissions at Plaintiff residences.   Therefore, there is **no scientific evaluation of the alleged impact of CCSC odor and/or dust emissions on the surrounding area** that I can respond to as the basis for defining the proposed class area.

*See* **<u>Exhibit J</u>**, Expert Report of Ranjit J. Machado, P.E. ("Machado Report") at pp. 5-6 (emphasis added).

In fact, Dr. Cal's hypothetical and canned expert report is a sham – as he testified, the putative "class area was given to [him]."  He has "nothing to do with the assignment of the class area," and he doesn't know whether the proposed "class area is appropriate."  Plaintiffs implicitly recognize this and characterize Cal's report merely as providing "a roadmap for testing at the merits stage of the case."  ECF No. 58, PageID.669.  This is a far cry from affirmatively demonstrating compliance with Rule 23(a)'s requirements.

Here, Plaintiffs have failed to demonstrate "commonality" because Plaintiffs have failed to show that the putative class members "have suffered the same injury." They have failed to present any scientific evidence, such as *air dispersion modeling*

of CCSC's emissions (or the 28 other "large air emission sources" in the area (*see* Ex. C at p. 4)), of the likely area of impact.  Because they have failed to affirmatively demonstrate compliance with Rule 23(a), as required by controlling precedent, certification of the putative class is not warranted.[10]

### 2. The Named Plaintiffs' Claims Are Not "Typical" under Rule 23(a)(3).

Typicality requires that a "'sufficient relationship exists between the injury to the named plaintiff and conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct.'"  *Stout v. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000).  Further, "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation."  *Cahoo v. Fast Enterprises LLC*, 508 F. Supp. 3d 138, 158 (E.D. Mich. 2020), *quoting Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000).

The Named Plaintiffs, Jason and Danielle Charles and Louis Crocker, are all owners (as opposed to renters), and they each assert claims for <u>diminution in property values</u> (both individually and as representatives of the putative class).

---

[10]  With respect to Rule 23(a)(1)'s requirement of numerosity, Plaintiffs' Motion to Certify does not reveal the basis for their claim that there are "over 5,400 households withing the proposed Class Area".  ECF No. 58, PageID.675.  Thus, there is no indication that this figure is based on anything other than "mere speculation."  *See In re OnStar Cont. Litig.*, 278 F.R.D. 352, 373 (E.D. Mich. 2011) ("'impracticability of joinder must be positively shown, and cannot be speculative.'") (internal citations omitted); *Rockey v. Courtesy Motors, Inc.*, 199 F.R.D. 578, 582 (W.D. Mich. 2001) (noting that "[m]ere speculation as to the number of parties involved is not sufficient to satisfy Rule 23(a)(1).").

However, they each have admitted that the value of their properties has *increased* since July 21, 2018.  *See* L. Crocker Responses to Req. for Adm., **Exhibit K** hereto, RFA 9; D. Charles Responses to Req. for Adm., **Exhibit L** hereto, RFA 9; J. Charles Responses to Req. for Adm., **Exhibit M** hereto, RFA 9.  This has been confirmed by the Expert Witness Report of Joseph Torzewski, MAI, **Exhibit N** hereto, at p. 16 ("the data shows that the true cash values of both the Crocker Home and the Charles' Home have increased on a yearly basis.").

Because the representative Plaintiffs have admitted that they suffered no diminution in value, their claims are not typical of class members who are owners who wish to pursue diminution in value claims.

**3.    The Named Plaintiffs Have Not Demonstrated that They Will Fairly and Adequately Represent the Class under Rule 23(a)(4).**

Rule 23(a)(4) only permits class certification if "the representative parties will fairly and adequately protect the interests of the class."  The Court must ask whether the representatives will "vigorously prosecute the interests of the class," and whether any conflicts of interest exist between the representative and the class.  *Senter v. Gen. Motors Corp*., 532 F.2d 511, 525 (6th Cir. 1976).  "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members."  *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) (citation omitted).

Furthermore, it is well-settled that only homeowners can claim diminution of value. *See, e.g., Sines v. Darling Ingredients Inc.*, No. CV 19-19121, 2023 WL 3841741, at *12 (D.N.J. June 6, 2023) (class certification denied, and court noted that "'Renters – who have no ownership interest in the property they occupy – cannot suffer diminution in property value damages.'").

CCSC does not dispute the adequacy of Plaintiffs' counsel. But as mentioned above, the representative Plaintiffs have not demonstrated that they "possess the same interest and suffered the same injury" as the putative Class members. *See Isabel v. Velsicol Chem. Corp.*, No. 04-2297 DV, 2006 WL 1745053, at *6-7 (W.D. Tenn. June 20, 2006) ("Decisive here is the fact that named plaintiffs … do not claim … one of the broad classes of injury raised in Plaintiffs' complaint. This misalignment of interests between representative plaintiffs and the larger class is exactly what typicality is intended to prevent. Because the claimants named are not sufficiently typical, Plaintiffs have failed to satisfy a necessary prerequisite to certification of the proposed class action."). The named Plaintiffs have essentially abandoned their diminution in value claims, and they have a natural conflict of interest with the *renters* in the putative class. Consequently, they have not demonstrated that they will "fairly and adequately protect the interests" of the

renters[11] in the class, who cannot claim any diminution in value and are forced to assert different types of rental damages.

**B.    Plaintiffs Have Failed to Establish "Predominance" and "Superiority" under Rule 23(b)(3).**

For class certification, Plaintiffs "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (*quoting Wal-Mart*, 564 U.S. 338 at 350). "In contrast to Rule 23(a)'s commonality requirement, … Rule 23(b)(3)'s 'predominance criterion is far more demanding.'" *Cochran v. Oxy Vinyls LP*, 2008 WL 4146383 at *11 (*quoting Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 624 (1997)).

The mere presence of common questions is not enough to satisfy Rule 23(b)(3). Rather, Rule 23(b)(3) requires that those common issues "predominate over any questions affecting only individual members." *Comcast*, 569 U.S. at 34. Rule23(b)(3) does not permit certification of classes that are not "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623-24. Thus, "[a] proposed class generally will fail the predominance test when 'the legal or factual questions that qualify each class member's case as a genuine controversy,' are not 'subject to generalized proof, and thus applicable to the class as a whole.'" *Cahoo v. Fast Enterprises LLC*, 508 F. Supp. 3d 138, 160 (E.D. Mich. 2020) (*citing*

---

[11]   23 of the 90 "data sheet" respondents identified themselves as renters, but none of the representative Plaintiffs is a renter.

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017)).

For this reason, there has been a consistent trend over several decades *against* certifying mass toxic torts claims. The Advisory Committee Notes to Rule 23 advise that "[a] 'mass accident' resulting in injuries to numerous persons *is ordinarily not appropriate for a class action* because of the likelihood that significant questions, *not only of damages but of liability and defenses of liability*, would be present, affecting the individuals in different ways. In these circumstances an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried." Rule 23 Advisory Committee's Notes on 1966 Amendment (emphasis added).

The Manual for Complex Litigation (Fourth) acknowledges that this trend applies to mass tort cases as well:

> Since *Amchem* …, however, a number of district courts have refused to certify dispersed personal injury or **property damage mass tort class actions** for the purpose of trial, or have decertified them, finding that varying state laws and individual issues of exposure, causation, and damages defeat the predominance requirement of Rule 23(b)(3), making trial unmanageable.

*See* Manual for Complex Litigation (Fourth), Section 22.72 at 419. Particularly with mass tort claims, the Court is obligated "to take a 'close look' at whether common questions predominate over individual ones." *Comcast*, 569 U.S. at 34 (*quoting Amchem*, 521 U.S. at 615).

In this case, individualized issues predominate over common questions, not the reverse. The starting point for an analysis under Rule 23(b)(3) should be an identification of the legal elements of Plaintiffs' claims and the evidence that will be required to prove those elements. *See Rodney v. Nw. Airlines, Inc.*, 146 F. App'x 783, 786 (6th Cir. 2005). With little or no scientific supporting evidence tying CCSC's emissions to "the proposed class boundaries," Plaintiffs ask the Court to ignore the gaping holes in their case relating to actual injury, causation, and damages of each individual class member.

However, whether CCSC is liable in negligence and nuisance cannot be decided on a class-wide basis, as negligence requires proximate causation and actual injury, which are highly individualized issues. *Morley v. Michigan Sugar Co.*, No. 354085, 2021 WL 5405867, at *7 (Mich. Ct. App. Nov. 18, 2021) (granting defendant's motion to dismiss on negligence claim because the plaintiffs "have not alleged that the condition [of noxious odors] has physically damaged their property."). Nuisance requires a weighing process and showing of substantial harm to each individual's property. *Adams v. Cleveland-Cliffs Iron Co.*, 237 Mich. App. 51 (1999) (finding the trial court did not err in dismissing the claims of nuisance when there was no physical intrusion or physical effect).

In order to prove their nuisance claim, Plaintiffs must show not only that their individual property rights were interfered with <u>by CCSC</u>, but that such invasion resulted in significant harm proximately caused by CCSC. *Id.* at 67 (internal

citations omitted).  This requires individualized proofs.  *See In re Behr Dayton Thermal Prod., LLC*, No. 3:08-CV-326, 2017 WL 11690584, at *11 (S.D. Ohio Mar. 20, 2017), *aff'd sub nom. Martin v. Behr Dayton Thermal Prod. LLC*, 896 F.3d 405 (6th Cir. 2018) ("To prove actual injury, each class member must rely on highly individualized proofs.  This weighs heavily against class certification.").  The same is true for negligence.  *Morley* at *7.

This Court on prior occasions has declined to certify a negligence and nuisance class action, concluding that individual issues predominated over common issues.  *See Snow v. Atofina Chems., Inc.*, Nos. 01-72648, 01-75012, 2004 WL 3768120 (E.D. Mich. Mar. 18, 2004) (Roberts, J.).  In *Snow*, the plaintiffs moved to certify a class of individuals who were evacuated after a chemical explosion at the defendant's facility on theories of negligence and nuisance.  *Id.* at *1.  The court agreed with the defendants that "*proof of 'significant harm' for the claim of nuisance [would] require individual proofs*, because of the varying lengths of evacuation, reasons for evacuation, circumstances of evacuation, levels of inconvenience, and extent of exposure."  *Id.* at *7 (emphasis added).  As proximate cause and damages would also require individual proofs, the court found that "discovery and related proceedings [would] primarily focus upon significant harm, proximate cause and damages," leaving "no basis for the Court to find that the sole common issue of liability predominate[d] over the three other issues that [would] require claimant-specific proof."  *Id.*

- 23 -

Similarly, the Sixth Circuit in *Ball v. Union Carbide Corp.*, 385 F.3d 713 (6th Cir. 2004)*,* affirmed the district court's denial of class certification in a case where residents of Oak Ridge, Tennessee sought to certify two sets of classes because they and their properties were allegedly harmed by exposure to radioactive materials. The Sixth Circuit noted the district court's conclusion "that class action certification is generally not appropriate in mass tort cases." *Id*. at 726. The Court found that "Plaintiffs did not have claims common and typical to the class." *Id*. at 727. It found that "[e]ven though liability issues may have been common to the putative class, … Plaintiffs have raised individualized issues" dependent on their varying "exposure to toxic emissions or waste" and "their period of residency" in the affected neighborhood. *Id*. at 727-28. It found that the "'named plaintiffs who already have thyroid cancer have fundamentally different interests than those named and unnamed plaintiffs who do not.'" *Id*. at 728 (citation omitted).

As noted earlier, reviewing Plaintiffs' data sheets reveals how individualized the inquiry will be. *See* Ex. D. There is no uniform exposure to the class members that is subject to common proof. *See* Ex. J, Machado Report at p. 10 ("Odor is also dependent on subjective individual perceptions based on the vast degree of individual variation inherent in biology and response to odor.").

Also, because Plaintiffs defined part of the proposed class to include "renters," the Court will need individual evidence to determine whether these renters have a property right and suffered any loss to use and enjoyment sufficient to state a

nuisance claim in the first place.  These inquiries will inevitably lead to serial mini-trials that will dominate the proceeding.

The Sixth Circuit has noted that "each named class representative 'must allege an individual injury; they cannot piggyback off the injuries suffered by other, unidentified members of the class.'"  *See Norman v. FCA US, LLC*, No. 2:22-CV-11393-TGB-CI, 2023 WL 6388926, at *6 (E.D. Mich. Sept. 30, 2023) (*quoting Fox v. Saginaw County*, 67 F.4th 284 (6th Cir. 2023)).

Proximate cause of an alleged interference cannot be established with common proofs either.  *Burkhead v. Louisville Gas & Elec. Co.*, 250 F.R.D. 287, 300 (W.D. Ky. 2008) ("the critical evidence of causation as to [both negligence and nuisance] … [was] to be based upon highly individualized testimony").  Plaintiffs' cursory reliance on the mere presence of alleged odors and dust is insufficient because here there are multiple potential sources of odor and dust.  *See also Ramik v. Darling International, Inc*., No. 98-40276 (E.D. Mich. May 24, 1999), **Exhibit O** hereto (finding that where there are multiple potential sources of odor, individual questions predominate with respect to proximate cause because the defenses to liability that the defendant will offer require substantial individual proofs related to the character of the odors at each individual residence).  For each odor incident, this will entail highly subjective evidence on odor nature and intensity and involve, among other things, questions of proximity to CCSC, wind direction, length of exposure and type of dust or debris, and the elimination of other potential sources of

such odors and dust.  Thus, the cause and nature of each class member's alleged injury varies based on numerous individual factors, and will be incapable of resolution on a class-wide basis.

Damages for intangible injuries such as the loss of use and enjoyment of property "necessarily implicate[] the subjective differences of each plaintiff's circumstances; they are an individual, not class-wide remedy." *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006) (citation omitted); *see also Schechner v. Whirlpool Corp.*, No. 2:16-CV-12409, 2019 WL 4891192, at *6 (E.D. Mich. Aug. 13, 2019) ("Rule 23(b)(3)'s predominance requirement is satisfied only if the plaintiffs can show that 'damages are capable of measurement on a classwide basis.'") (*quoting Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)).

Ironically, Plaintiffs rely heavily on *In re Behr Dayton Thermal*, 2017 WL 11690584 at *14, while failing to acknowledge that the Court squarely ruled against their predominance argument in this case: "Plaintiffs have failed to satisfy the predominance requirement of Rule 23(b)(3).  Highly individualized issues concerning fact-of-injury and causation overwhelm the few questions that are common to the class."

In *Flint Water Cases*, this Court found Rule 23(b)(3) damages class certification improper because "key questions related to most of the elements of Class Plaintiffs' professional negligence claim—duty, but-for and proximate causation, and harm—require individualized proof." *In re Flint Water Cases*, 558

F. Supp. 3d 459, 511 (E.D. Mich. 2021). This included the fact that "each class member bringing a property damage claim would need to testify to individual household water access and use during the relevant time period." *Id.* The same is true in this case with respect to the use of each class member's property and alleged disruption by odors and dust.

Plaintiffs rely solely on *Widdis v. Marathon Petro. Co., LP*, 2014 WL 11444248 (E.D. Mich. Nov. 18, 2014) as support for predominance, but that case is distinguishable. In *Widdis*, the harm was allegedly caused by a single explosion and fire incident in a distinct area. *Id.* at *9. In discussing the predominance requirement, the court quoted the Sixth Circuit as approving class treatment "where the defendant's liability can be determined on a class-wide basis because the cause of the disaster is a single course of conduct which is identical for each of the plaintiffs." *Id.* at *7.

Unlike the *Widdis* case, the cause of the alleged damages in the case at bar is not caused by a single event. The harms alleged in this case resulted from numerous allegations of emissions and odors that occurred at various times, in various places, from various sources spread across a 1.5-mile radius. In fact, there is a significant question as to whether CCSC's emissions even caused the alleged harms.

Reliance upon *Olden v. LaFarge Corp.*, 383 F.3d 494 (6th Cir. 2004) as "controlling authority" is also misplaced. In *Olden*, a group of property owners sued a cement manufacturer alleging real and personal property damages and a need for

medical monitoring due to the release of cement kiln dust from defendant's operations. The Sixth Circuit distinguished that situation from a case involving "noxious odors, which is quite subjective." *Id*. at 509. An odor case (like the one here) "'will require substantial individual proofs related to the character of the odors at each individual residence.'" *Id*. (citation omitted.)

Unlike the present case, *Olden* is a signature single-source case with a single actor. Here, the class area lies within a heavily industrialized area, with no fewer than 29 "large air emission sources" in the area. *See* Ex. C. By contrast, in *Olden,* the Sixth Circuit concluded that the toxins emitted by the defendant were distinguishable from those emitted by "other industrial sources" nearby. *Olden,* 383 F.3d at 508. That is not the case in Southwest Detroit, where there are many industrial sources of odors and dust. *See In re Behr Dayton Thermal*, 2017 WL 11690584 at *14 (distinguishing *Olden* because "there was only one major source of contamination, and all class members had suffered some injury-in-fact, as a result of the cement dust that had settled on their property").

Another reason why individual questions predominate over common ones in this case is that CCSC has asserted *affirmative defenses* that Plaintiffs' injuries and damages, if any, were caused in whole or in part by the acts, omissions, carelessness and/or negligence of third parties over whom CCSC had neither control nor right of control. *See* ECF No. 5, PageID.68 (11th Defense). The E.D. Michigan has noted that "[i]n analyzing predominance, the Court must also consider affirmative

individualized defenses that Defendants could put forward which could 'affect[ ] the individuals in different ways.'"  *See Stanley v. U.S. Steel Co*., No. 04-74654, 2006 WL 724569 (E.D. Mich. Mar. 17, 2006) ("The defenses raised may also create individual questions of fact or law that predominate over common questions of fact or law, thereby precluding class certification.").

In this case, certain class members live closer to the Marathon Refinery or to Levy's operations.  *See* Ex. J, Machado Report, Figure 2 at p. 8.  Determining the source of odors and dust experienced by these individuals for purposes of the Defendants' affirmative defenses will require individualized inquiry.  *See id.* at p. 6 ("Based on predominant wind directions from the Detroit City airport … wind blows generally from the southwest, over the Marathon and Levy operations and the proposed class area.").

Nor have Plaintiffs satisfied Rule 23(b)(3)'s superiority requirement.  Other than conclusory statements, Plaintiffs have not explained how certifying the putative class *in this case* will result in increased efficiencies, or how a class action is superior to traditional case management tools.  Nor have they proposed a specific trial plan articulating how a class action would be tried with common proofs.  *See Snow v. Atofina Chemicals, Inc*., No. 01-72648, 2004 WL 3768120, at *7 (E.D. Mich. Mar. 18, 2004) ("Nor have Plaintiffs' persuasively shown that, certification is superior to the traditional tools of case management, such as joinder and/or consolidation").

- 29 -

Presentation of individualized evidence on the primary issues of significant harm, proximate causation, and damages will clearly dominate the proceeding and eliminate any efficiencies of a class-wide adjudication on issues that have been relegated to the background.  Thus, Plaintiffs' motion has not shown a class action is superior.

### C.     Plaintiffs Have Not Demonstrated That Certification of Class Issues under Rule 23(c)(4) Would be Appropriate.

As a fallback, Plaintiffs ask this Court to certify class issues if the action cannot be certified under Rule 23(b)(3).  However, even issue classes must meet the Rule 23(a) requirements of numerosity, commonality, typicality and adequacy of representation.  *See In re Behr Dayton Thermal*, 2017 WL 11690584, at *17 ("Plaintiffs have satisfied the requirements of Federal Rule of Civil Procedure 23(a)").

In this case, Plaintiffs have failed to put forth any scientific supporting evidence tying CCSC's emissions to "the proposed class boundaries."  Thus, they have failed to meet Rule 23(a)'s prerequisites, so class certification of claimed common issues under Rule 23(c)(4) likewise is not appropriate.

## <u>CONCLUSION</u>

For the above-stated reasons, Plaintiff's Motion to Certify should be denied.

Dated: February 9, 2024                          Respectfully submitted,

                                                 *s/Vincent Atriano*
                                                 Vincent Atriano

Danelle M. Gagliardi
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, OH 43215
Tel: (614) 365-2783
vincent.atriano@squirepb.com
danelle.gagliardi@squirepb.com

Erik D. Lange (P79166)
Squire Patton Boggs (US) LLP
4900 Key Tower
127 Public Square
Cleveland, OH 44114-1304
(216) 479-8040
erik.lange@squirepb.com

*Attorneys for Defendant Cleveland-Cliffs Steel Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of February, 2024, the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, and notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.

<u>*s/Vincent Atriano*</u>
*Attorney for Defendant Cleveland-*
*Cliffs Steel Corporation*