## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LOUIS CROCKER, DANIELLE                )
AND JASON CHARLES, on behalf of        )
themselves and all others similarly    )
situated,                              )
                                       )  Case No. 4:21-cv-11937
    Plaintiffs,    )
                                       )
vs.                                    )  Hon. Shalina D. Kumar
                                       )  Magistrate Judge Curtis Ivy, Jr.
CLEVELAND-CLIFFS STEEL                 )
CORP. (d/b/a AK STEEL                  )
DEARBORN WORKS),                       )
                                       )
    Defendant.

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs Louis Crocker, and Danielle and Jason Charles, on behalf of themselves and all others similarly situated, respectfully move this Court for an order granting final approval of the Settlement Agreement. The proposed final approval order is attached hereto as **Exhibit 3**. In support of this motion, Plaintiffs state as follows:

1.    On July 20, 2021, Plaintiffs filed this case as a class action against Defendant Cleveland-Cliffs Steel Corporation (hereinafter, "Defendant"), bringing

claims of private nuisance, public nuisance, and negligence.[1]

2.    The Complaint alleged that Defendant's ownership and operation of its steel manufacturing plant located at 4001 Miller Road in Dearborn, Michigan had caused fugitive air particulates and noxious odors to invade the private residential properties of Plaintiffs and the proposed Class. (ECF No. 4, PageID.39, ¶ 2).

3.    In an effort to avoid the time, risk, and expense of further litigation, the Parties engaged in lengthy settlement discussions to determine whether a resolution of the case could be reached prior to a hearing on Plaintiffs' Motion for Class Certification pursuant to Federal Rule of Procedure 23. To that end, the Parties agreed to participate in mediation with independent neutral Hon. Richard B. McQuade, Jr, (Ret.). On August 8, 2024, the Parties participated in a full-day mediation session and although no settlement was reached at mediation, the Parties continued to negotiate and ultimately reached the terms of the settlement to resolve all claims in this case on September 5, 2024, subject to class settlement approval by the Court after notice to the settlement class. (**Ex. 2**, ¶ 11-12).[2]

4.    Based upon their investigation, and evaluation of the facts and law

---

[1] Plaintiffs filed an amended Complaint on September 2, 2021, after Defendant removed the case to the United States District Court for the Eastern District of Michigan asserting the same claims against Defendant.

[2] The Declaration of Laura L. Sheets is attached hereto and will be referenced throughout as "Ex. 2".

relating to the matters alleged in the action, Plaintiffs (on behalf of themselves and the proposed Class) and Class Counsel have agreed to settle the lawsuit, pursuant to the terms of the Settlement Agreement. (**Ex. 2**, ¶¶ 16-24).

5.      The terms of the proposed settlement are fully set forth in the Settlement Agreement. (**Ex. 1**). Defendant has agreed to pay $975,000 in direct monetary relief to be allocated pursuant to the procedures outlined in the Settlement Agreement. (**Ex. 1**, pgs. 15-16, § 5)

6.      The Parties have agreed to a Class, for purposes of the Settlement only, consisting of the following:

> **All owner/occupants and renters of residential property within the SEP Area and any households that returned Data Sheets to Class Counsel on or before September 5, 2024.[3]**

7.      As part of the proposed Settlement Agreement, the Parties have agreed to the appointment of Steven Liddle, Laura Sheets, and Reed Solt of Liddle Sheets PC as Class Counsel and appointment of Plaintiffs as the Class Representatives. (**Ex. 1**, § 2(e), (o)).

8.      The proposed Settlement Agreement was achieved in good faith and without any undue influence. Each side has zealously represented its interests.  (**Ex. 2,** ¶ 12-14).

---

[3] The SEP Map is included in the Class Area Map attached as Exhibit 1 to the Settlement Agreement.

9.     The proposed Settlement was achieved by counsel experienced in similar litigation.  (**Ex. 2**, ¶ 2-8).

10.    On February 10, 2025, Plaintiffs presented the Settlement to the Court and moved for an order preliminarily approving the Settlement pursuant to Fed. R. Civ. P. 23(e). (ECF No. 76).

11.    The Settlement provides for a payment of $975,000 by Defendant for the benefit of the Class.

12.    On April 17, 2025, the Court entered an Order Preliminarily Approving Class Action Settlement, which conditionally certified the Class under Fed. R. Civ. P. 23(a) and (b)(3) and determined that the Settlement is "preliminarily approved as fair, just, reasonable and adequate, subject to further consideration at a Fairness Hearing." (ECF No. 80, Page.ID. 2139, ¶¶1-2). The Court also approved the class notice as "the best notice practicable under the circumstances" and ordered Class Counsel to disseminate the notice pursuant to the terms of the Settlement. (*Id.*, ¶ 5).

13.    A Fairness Hearing was set for July 17, 2025 at 11:00 a.m., at which time the Court could consider any objections to the Settlement and whether to enter Final Judgment. (*Id.*, PageID. 2142, ¶ 12).

14.    On April 30, 2025, Class Counsel disseminated the approved Class Notice to all available residential addresses within the Class Area. (**Ex. 2**, ¶ 25). Class    Counsel    also    created    a    Settlement    Website,    hosted    at

www.lsccounsel.com/cliffsdearborn, where copies of the Complaint, Notice, Claim Form, Settlement Agreement, and Class Area Map were published and made available to Class Members. Class Counsel also established a toll-free hotline, where Class Members could receive direct support from Class Counsel.

15.    Class Counsel is pleased to report that the reaction of the Class to the proposed Settlement has been overwhelmingly positive. 161 Class Member households have submitted valid claims that have been approved for payment by Class Counsel as of the date of this filing.

16.    No opt-outs or objections to the Settlements were received.

17.    For the reasons discussed in greater detail in the enclosed Memorandum in Support, Plaintiffs respectfully request that the Court grant final approval of the Class Action Settlement by entering the order attached hereto as **Exhibit 3**, granting:

  a.  Final approval of the Settlement as fair, reasonable, and adequate;

  b.  Final certification of the Class for settlement purposes;

  c.  Final appointment of Plaintiffs as Class Representatives;

  d.  Final appointment of Class Counsel;

  e.  Plaintiffs request for attorneys' fees in the amount of $325,000 and reimbursement of litigation costs in an amount not to exceed $17,000; and

  f.  An incentive award of $ 5,000 to each Class Representative Household.

**WHEREFORE** Plaintiffs, on behalf of themselves and the proposed Class, respectfully request that the Court grant this Motion and enter the proposed Final Approval Order (**Exhibit 3**).

Dated: July 2, 2025

Respectfully Submitted,

*/s/ D. Reed Solt*
Steven D. Liddle
Laura L. Sheets
D. Reed Solt
**LIDDLE SHEETS P.C.**
975 E. Jefferson Avenue
Detroit, MI 48207
(313) 392-0015
sliddle@lsccounsel.com
lsheets@lsccounsel.com
rsolt@lsccounsel.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| LOUIS CROCKER, DANIELLE AND JASON CHARLES, on behalf of themselves and all others similarly situated, | ) <br> ) <br> ) <br> ) |
| | ) Case No. 4:21-cv-11937 |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Hon. Shalina D. Kumar |
| | ) |
| CLEVELAND-CLIFFS STEEL CORP. (d/b/a AK STEEL DEARBORN WORKS), | ) <br> ) <br> ) |
| Defendant. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.      Is the Settlement Agreement fair, reasonable and adequate under Fed. R. Civ. P. 23(e)(2)?

**Plaintiffs Answer:** YES.

2.      Does class certification under Fed. R. Civ. P. 23(a) and (b)(3) remain appropriate for settlement purposes?

**Plaintiffs Answer:** YES.

3.      Are the requested attorneys' fees reasonable in light of the benefit obtained for the Class?

**Plaintiffs Answer:** YES.

4.      Should the Court approve a modest incentive award to the Class Representatives?

**Plaintiffs Answer:** YES.

## <u>MOST APPROPRIATE AUTHORITIES</u>

Fed. R. Civ. P. 23(a)

Fed. R. Civ. P. 23(b)(3)

Fed. R. Civ. P. 23(e)

*Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496 (E.D. Mich. 2000)

*Moulton v. U.S. Steel Corp.*, 581 F.3d 344 (6th Cir. 2009)

*UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

## INTRODUCTION

Plaintiffs Louis Crocker and Danielle and Jason Charles brought this action on behalf of themselves and a proposed class of their neighbors, alleging that the fugitive air particulates and noxious odors from the Cleveland-Cliffs Dearborn Works (hereinafter the "Facility" or "Defendant's Facility") have entered their properties – and properties throughout the proposed Class Area – thereby interfering with the use and enjoyment of Plaintiff's and the Class's homes and properties.

This case comes before the Court now for a final Order approving the settlement that was previously preliminarily approved on April 17, 2025. Pursuant to this Court's preliminary approval Order finding the settlement to be fair, reasonable and adequate, Notice was provided to the proposed Class via first-class mail, publication in both the *Detroit Free Press* and the *Detroit News*, and publication on Plaintiffs' Counsel's webpage.

Plaintiffs are pleased to report that the reaction of the Class has been overwhelmingly supportive of this excellent settlement. More than 160 claims have been received and approved by Class Counsel. Further not one resident submitted an opt-out or an objection to the Settlement. (**Ex. 2.**, ¶¶ 27-29). In view of the Class's overwhelmingly positive reaction, and the substantial benefits conferred by the Settlement compared against the substantial costs, risks, and delay of further litigation, the Settlement exceeds the standard for final approval.

Plaintiffs' Counsel at Liddle Sheets P.C. ("LSPC") are among the few, and perhaps only, attorneys in the United States to dedicate its practice to prosecuting nuisance cases against corporate polluters with tangible results. This is because the necessary resources and experience as well as the risk of substantial loss make such cases difficult or impossible for most law firms to prosecute. As stated by one federal court:

> Class Counsel—from the Detroit-based firm Liddle [Sheets] P.C.—are among the few attorneys that specialize in class-action odor-nuisance litigation. Class Counsel skillfully and vigorously investigated and prosecuted the Class's claims … Absent the skill and efficiency of Class Counsel, it is also unlikely that individual Class Members could have obtained any recovery on their nuisance claims.

*Batties v. Waste Mgmt. of Pa., Inc.*, No. 14-7013, 2016 U.S. Dist. LEXIS 186335, at *47 (E.D. Pa. May 11, 2016). Class Counsel is deeply versed in analyzing the strength of such cases, the potential benefits of appropriately settling them, and the cost, risk, and delay that would be imposed on the Class in the absence of settlement. (**Ex. 2**, ¶ 23). This experience has led to an outstanding result for the Class here, and Plaintiffs request that this Court grant final approval.

## FACTUAL BACKGROUND

On July 20, 2021, following an extensive pre-suit investigation by Plaintiffs' Counsel, Plaintiffs filed a complaint against Defendant for nuisance and negligence. Plaintiffs and the Class are residents of the area surrounding Defendant's steel production facility in Dearborn, Michigan (hereinafter, the "Facility").

Plaintiffs' First Amended Complaint alleged that Defendant had failed to control the fugitive noxious odor, dust, and air particulate emissions generated by the Facility, giving rise to causes of action for nuisance and negligence and claims for monetary and injunctive relief (ECF No. 4, PageID. 39). Plaintiffs further alleged that on frequent and recurrent occasions, air particulate and odorous emissions from the Facility entered onto their properties, interfered with their abilities to use and enjoy their homes, and diminished the value of their properties. (*Id.*, PageID. 47). Defendant strongly denies these allegations.

Following an investigation by Plaintiffs' uniquely experienced counsel, informal discovery between the Parties, and a full-day mediation session held on August 8, 2024, before a neutral mediator, Hon. Richard B. McQuade, Jr, (Ret.), the Parties reached an agreement to fully and finally resolve the case.

## I.    TERMS OF THE SETTLEMENT AGREEMENT.

Plaintiffs rely on their previously filed memorandum in support of their Motion for Preliminary Approval of Class Action Settlement for a complete summary of the material terms of the Settlement, which is attached hereto as **Exhibit 1**. Under the proposed Settlement, Defendant will create a common fund for the benefit of the Class in the amount of $975,000, which will be distributed on a pro rata basis (after the payment of costs and attorney fees, such as the Court may

approve) to all Households who timely submit an approved Claim Form. (**Ex. 1**, pg. 16, §d).

In exchange for this $975,000 payment, Plaintiffs offer a full release and discharge by Plaintiffs and the Class of any and all claims that were, or could have been, asserted between August 31, 2019, and the Effective Date of the Settlement (the "Class Period"). (*Id.*, pgs. 16-17, § 5). *The Release expressly preserves the Class's right to bring any claims that any may have for medically diagnosed personal injuries and any claims based on odors or other emissions of airborne pollutants or contaminants that occur after the Effective Date. (Id.)*

The Settlement provided fair, easy to understand terms for Class Members to exercise their right to obtain payment, opt-out, or object to the Settlement. From the date the notice was mailed, Class Members were afforded thirty (30) days to object to or opt out of the Settlement. (**Ex. 1**, pgs. 17-19, § 6). Class Members who wished to participate in the Settlement were given forty-five (45) days to submit a valid, timely Claim Form for a share of the common fund. (*Id.*; *see also* ECF 76-6, Claim Form).

## II.  CLASS NOTICE AND REACTION OF THE CLASS.

The reaction of the Class has been overwhelmingly, almost unanimously, positive. On April 30, 2025, the approved Class Notice was disseminated to all available residential addresses within the Class Area and all Data Sheet respondents

residing outside of the Settlement Class Area.[4] (**Ex. 2**, ¶ 25). Class Counsel also created a Settlement Website, where copies of the Complaint, Notice, Claim Form, Settlement Agreement, and Class Area Map were published and made available to Class Members at www.lsccounsel.com/cliffsdearborn. (*Id.*) Class Counsel also established a toll-free hotline, where Class Members could receive direct support from Class Counsel. (*Id.*) In short, the notice program was successfully executed.

By all accounts, the Notice was effective, and the Class overwhelmingly approves the Settlement. (**Ex. 2**, ¶ 31). As of this filing, 161 valid claims have been approved for payment by Class Counsel and <u>no</u> opt-outs or objections. (*Id.*, ¶¶ 27-29).

## III.   PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION COSTS, AND MODEST INCENTIVE AWARDS TO THE CLASS REPRESENTATIVES.

Pursuant to the terms of the Settlement, Plaintiffs have the right to request payment of reasonable attorneys' fees, costs or expenses, and a modest incentive award to the two named Plaintiffs who stepped forward to represent the interests of the Class and obtain the benefits of this Settlement.

The Settlement provides that Class Counsel may apply to the Court for an award of attorneys' fees in an amount not to exceed one-third (1/3) of the Total Settlement Value, net of expenses. (**Ex. 1**, pg. 12, § 3(f)). The Settlement further

---

[4] 936 residential households received the notice.

provides that Class Counsel may apply for reimbursement of any reasonable litigation costs or expenses to be paid from the Settlement fund. (*Id.*) Finally, the Settlement provided that, subject to the Court's approval, a one-time lump sum payment or incentive award of no more than $5,000 per household shall be paid to the named Class Representatives from the Settlement Fund for their efforts on behalf of the Class, in addition to any distribution or payment they may receive by virtue of their status as one of the Settlement Class Members. (**Ex. 1**, pg. 16, § 5(c)). Each of these terms were clearly explained to Class Members through the approved Notice. (ECF 76-4). No objections were made to the requested attorneys' fees or the incentive payments to the Class Representatives.

For the following reasons, Plaintiffs respectfully request that the Court finally approve the Settlement by entering the order attached hereto as **Exhibit 3**.

## LEGAL STANDARD

Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). In granting final approval, courts are directed to consider whether:

(A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account:

     i.   the costs, risks, and delay of trial and appeal;

     ii.   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

     iii.   the terms of any proposed award of attorney's fees, including timing of payment; and

     iv.   any agreement required to be identified under Rule 23(e)(3); and

(D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Sixth Circuit has long recognized that the law favors the settlement of class action lawsuits. *UAW v. Gen. Motors Corp*., 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions"). "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources*." In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (citations omitted).

## ARGUMENT

## I.   The Court Should Finally Approve the Settlement as Fair, Adequate, and Reasonable.

The Settlement Agreement is more than fair, reasonable, and adequate because it delivers substantial financial relief to the Class on an immediate basis, without delaying or subsuming any future award with protracted, complex, risky,

and costly litigation—the result of which would be anything but certain. Further, the Settlement preserves all future claims and all claims for personal injury, ensuring that the Class's rights are adequately protected. The fairness of this Settlement is underscored by the very strong claim rate and the lack of any opt-outs or objections, which are highly common in cases of this type.

## A.   Plaintiffs and Class Counsel Have Zealously and Adequately Represented the Class.

There are "two criteria for determining adequacy of representation: 1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996).

Here, Plaintiffs are represented by highly experienced class counsel at LSPC, which has been litigating air pollution class actions of this type for more than 25 years. (**Ex. 2**, ¶ 8). As one federal court noted in a similar case involving a similar settlement:

> Class Counsel—from the Detroit-based firm Liddle [Sheets] P.C.—are among the few attorneys that specialize in class-action odor-nuisance litigation. Class Counsel skillfully and vigorously investigated and prosecuted the Class's claims … Absent the skill and efficiency of Class Counsel, it is also unlikely that individual Class Members could have obtained any recovery on their nuisance claims.

*Batties v. Waste Mgmt. of Pa., Inc.*, No. 14-7013, 2016 U.S. Dist. LEXIS 186335, at *47 (E.D. Pa. May 11, 2016). Plaintiffs' counsel has been appointed to represent many dozens of classes of residents in dozens of similar cases in both state and federal courts. (**Ex. 2**, ¶¶ 7-8). Plaintiffs' Counsel has extensive experience in both negotiating and administering similar settlements. (**Ex. 2**, ¶¶ 31-32).

This outstanding settlement was reached on behalf of the Class in large measure due to LSPC's experience, diligent pre-suit investigation and vigorous advocacy on behalf of the Class. This pre-suit investigation consisted of Freedom of Information Act requests to the Michigan Department of Environment, Great Lakes, and Energy (EGLE) and a comprehensive review of the records thereby obtained. (**Ex. 2**, ¶ 13). Plaintiffs' Counsel additionally surveyed the putative class regarding their experiences. (*Id.*) Class Counsel is adequate.

Further, the named Plaintiffs in this case have been highly responsive, stepped forward to represent the interests of the Class, taken on the risk of filing a federal lawsuit, and have no conflicts with any Class Members. (**Ex. 2**, ¶ 39). The adequacy element is easily satisfied with respect to the Class Representatives as well.

**B.    The Settlement Was Reached as a Result of Extensive Arm's-Length Negotiations with Judge McQuade, Jr.**

The next factor analyzes whether "the proposal was negotiated at arm's length[.]" Fed. R. Civ. P. 23(e)(2)(B). "There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by

counsel for the class, is presented for court approval." 2 *Newberg On Class Actions*, Herbert B. Newberg and Alba Conte, §11.41, at 11-88 (3d ed. 1992). "[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note (2018 Amendment).

The Parties engaged in one full-day mediation before the Hon. Richard B. McQuade, Jr. (Ret.), who is a highly experienced and respected neutral mediator. At mediation, a frank discussion was held between the Parties regarding the substantive costs and benefits presented to each side that allowed both sides to carefully evaluate the value of this case and agree that the benefits of early resolution greatly outweighed the risks and costs of prolonged litigation. While settlement is necessarily a compromise, the Settlement addresses the concerns of Plaintiffs and the Class and delivers valuable monetary relief that was blessed by Judge McQuade, Jr.

## C.   The Proposed Relief Is Adequate.

Rule 23(e)(2)(C) requires the Court to ensure "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award

of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(c). Consideration of these factors readily supports final approval.

Defendant's payment of $975,000 is an excellent result for the Class under the circumstances. The costs, risks, and potential delays in a case like this are difficult to overstate. Litigating air pollution class actions is inherently costly, time consuming, risky, and often requires the involvement of highly specialized experts and the necessity for extensive documentary and testimonial evidence. (**Ex. 2**, ¶ 17-21). The class certification stage alone typically lasts for a period of years and involves significant costs, without significantly enhancing the likelihood of a favorable judgment at trial. (**Ex. 2**, ¶ 19). In the past, LSPC has expended in excess of $200,000 at the class certification phase alone. (**Ex. 2**, ¶ 21).

The relief provided by the Settlement compares favorably to similar class settlements. *See e.g., Burcar v. Decorative Panels Int'l, Inc.*, No. 22-cv-12054, 2024 WL 1020534 (E.D. Mich. March 8, 2024) (final approval of $1,000,000 class settlement for 1,748 households); *Nagy v. Lordstown Construction Recovery, LLC*, N.D. Ohio Case No. 4:22-cv-01376-BYP (final approval of $1,200,000 class settlement for 1,815 households); *Fuehrer v. Nestle Purina Petcare Co.*, E.D. Pa. Case No. 20-3910 (final approval of $800,000 class settlement for 4,145

households); *Hamilton v. 3D Idapro Sols. LLC*, W.D. Wisc. Case No. 18-cv-54-jdp (final approval of $725,000 class settlement for 1,911 households). (**Ex. 2**, ¶ 15).

Additionally, since this case was filed in 2021, the Defendant entered in an amended Consent Decree with the Justice Department and US EPA in 2023 that required Defendant to undertake more than $100 million in extensive improvement measures at the Facility to alleviate visible air emissions. Although Plaintiffs sought both damages and injunctive relief at the Facility to address the odor and dust emissions experienced by Plaintiffs and the Class, the outside imposition of extremely substantial improvement measures at the Facility obviated the need for additional improvement measures through this Settlement. The monetary relief achieved for Plaintiffs and the Class in the Settlement is therefore sufficient and reasonable to compensate them for past nuisance damages suffered, with the alleged emissions from the Facility being addressed separately through the amended Consent Decree.

Although Plaintiffs believe that their claims, and those of the Class, are meritorious, Plaintiffs face significant risks in seeking to obtain a judgment against Defendant in this matter, any number of which could have been the death knell of the case. (**Ex. 2**, ¶ 17). Odor nuisance class actions are unique from many other substantive categories of class action litigation, in that they are not infrequently denied certification depending on the underlying factual circumstances. (**Ex. 2**, ¶

18). While Plaintiffs continue to believe that class certification would have been appropriate in this case even absent settlement, Class Counsel also recognizes that class certification, particularly in an environmental case, is anything but certain.

Beyond the "rigorous analysis" standard now employed by federal courts evaluating the merits of class certification, Plaintiffs recognize the significant risk in obtaining class certification in federal courts. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). Further, even where certification is granted, the possibility of appeal and/or decertification remains, either of which represents a significant risk and would substantially delay a possible resolution. *See Powell v. Tosh*, No. 5:09-CV-00121, 2013 WL 4418531, at *12 (W.D. Ky. Aug. 2, 2013) (decertifying class).

If class certification were denied, the practical effect for the vast majority of the class would likely be to receive no relief at all. (**Ex. 2, ¶ 18**). Even if a large number of class members brought actions in their individual capacities, many hurdles would remain, and it is possible, if not likely, that the costs of litigation, without the benefit of being spread across the class, would significantly erode any potential recovery. (*Id.*)

Litigating beyond the class certification stage would necessarily involve voluminous discovery and likely hundreds of thousands of dollars' worth of expert testimony. Such litigation could proceed for several years through trial and likely appeals. Even if Plaintiff were able to prove to the finder of fact that significant odors

were emitted from Defendant's Facility, Plaintiff would still need to prove that those odors were transported to the properties throughout the Class Area at nuisance levels. (**Ex. 2**, ¶ 19). This would likely result in competing scientific testimony of sufficient complexity that the ultimate outcome would be anything but certain, and the risk of no recovery would be significant. (*Id.*) While Plaintiffs are confident that they would have made a strong case, the sheer number of variables in substantiating claims on behalf of the proposed Class makes winning and sustaining a judgment an uncertain proposition.

Further, Plaintiffs would have had to establish damages, both individually and on a class basis. In addition to being costly and time-consuming, Defendant could and likely would have challenged Plaintiffs' damages and/or the damages alleged on behalf of the Class. (**Ex. 2**, ¶ 20). There are any number of hurdles that have a very serious chance that no recovery at all would be obtained if the case proceeded through class certification, appeal, merits discovery, expert discovery, trial, and proof of damages. (*Id.*).

The Settlement achieves substantial benefits for the class without expending additional resources and without delay. The Class will obtain immediate relief, as opposed to waiting years for an uncertain outcome which, if it arrives at all, would be many years down the road and significantly diminished by the costs of protracted litigation. The risks, costs, and delays associated with continued litigation, and the

very real possibility of obtaining no recovery for the Class weigh heavily in favor of Settlement on these terms.

The other factors under Rule 23(e)(2)(C) are also satisfied. The Settlement Agreement provides for a claims process that guarantees the right of every class member to receive an equal share of the Settlement fund. The net Settlement fund will be divided on a pro-rata basis between all households who submit a timely, valid claim form—of which there are 161 valid claims. The proposed method for processing claims and distributing relief is thus fair, and experienced Class Counsel is more than qualified to effectuate the Settlement, as it has done in many dozens of similar cases in the past. (**Ex. 2, ¶** 33).

Finally, while the Court has discretion over the award of attorneys' fees, the settlement is not conditioned on any specific award of attorneys' fees or incentive award to the named Plaintiffs. The Settlement explicitly states that the Court's award of attorneys' fees are "not consideration for this Settlement Agreement[.]" (**Ex. 1**, pg. 13, ¶ 3(g)). The Settlement terms regarding attorneys' fees are thus fair, and there are no agreements between the Parties other than the Settlement. This overwhelmingly supports final approval.

### D.   The Settlement Treats Class Members Equally Relative to One Another.

"It is well-settled that 'a Plan of Allocation need not be, and cannot be, perfect.'" *In re Auto. Parts Antitrust Litig*., No. 12-md-02311, 2019 WL 7877812,

at *3 (E.D. Mich. Dec. 20, 2019) (citation omitted). "Although the satisfaction of everyone is generally unobtainable, a plan of allocation should strive to obtain a delicate balance between precision and administrative convenience[.]" *Id*. (citation omitted). Courts find that settlements treat class members equitably where beneficiaries receive an "equal share of the … Settlement fund." *Bitzko v. Weltman*, No. 1:17-cv-00458 (BKS/DJS), 2021 WL 3514663, at *7 (N.D.N.Y. Aug. 10, 2021) (citation omitted). "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Amos v. PPG Indus.*, No. 2:05-cv-70, 2019 WL 3889621, at *10 (S.D. Ohio Aug. 16, 2019).

The Settlement Agreement allows Plaintiffs to request, at the sole discretion of the Court, a one-time $5,000 class representative incentive award to be paid to each of the Class Representative Households for their efforts on behalf of the Class. (*See* Ex. 1, pg. 16, ¶ 5(c)). Apart from a discretionary incentive award, the Settlement Agreement does not grant any Class Member preferential treatment. All Class Members are equally eligible to make claims for payment from the Settlement.

### E.   The Reaction of the Class Has Been Overwhelmingly Positive.

Some courts continue to consider the factors used to evaluate settlement fairness prior to the Rule 23(e) amendments. "In addition to the Rule 23(e)(2) factors, courts may also consider circuit-specific factors in the analysis. In the Sixth

Circuit, those factors (the "UAW factors") are: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *See UAW*, 497 F.3d at 631. "No single factor is determinative, and the Court should consider the factors relevant to the circumstances of each individual case." *Id*. (citation omitted). Factors 1-5 are largely subsumed by the Rule 23(e)(2) factors. *See Macy v. GC Servs. Ltd. P'ship*, 2019 WL 664522, at *2 (W.D. Ky. Dec. 6, 2019).

The sixth factor, the reaction of absent Class Members, weighs heavily in support of final approval. As stated above, 161 Class Member households have submitted timely, valid claims and no opt-outs or objections were received. The overwhelmingly positive reaction of the Class supports final approval.

### F.      Approval of the Settlement Is in the Public Interest.

The seventh factor, the public interest, is similarly satisfied. The Settlement represents the resolution of an alleged environmental impact to over one hundred Dearborn residents, which will provide meaningful relief to the community and certainty to the Defendant. Beyond the public interest in efficient resolution of litigation generally, the Settlement serves the important interest of encouraging

responsible environmental stewardship. This further cements the propriety of approval.

## II.    The Class Remains Appropriate for Settlement Certification.

The Court previously conditionally certified the Class. (*See* ECF No. 80). Nothing has changed since Plaintiffs made the initial showing in satisfaction of certification in his Motion for Preliminary Approval (ECF No. 76), and class certification remains equally, if not more, appropriate. More than 160 households submitted valid, approved claims. This further demonstrates that joinder of all these households would be impracticable and that the type of claims involved are overwhelmingly typical and common of one another. It is vastly superior to resolve these claims through an efficient claims process, as provided through this Settlement, as opposed to a contested class certification motion—the denial of which could stand to exclude many, if not all, of these claimants.

## III.    The Requested Attorneys' Fees and Costs Are Reasonable.

Class Counsel requests an award of $325,000 in attorneys' fees, which represents approximately 33% of the total settlement fund prior to deduction of litigation costs and expenses or incentive awards. The fee requested by Class Counsel is commensurate with the amount provided through the Settlement and is well within the range of attorneys' fees awarded in similar common fund cases.

It is well established that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980). "When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016) (citation omitted). The Sixth Circuit has stated that "[w]e give great deference to district courts when reviewing an attorney's fee award." *Moulton v. U.S. Steel*, 581 F.3d 344, 352 (6th Cir. 2009).

This Court has overwhelmingly concluded that "the percentage-of-the-fund approach is the better method" for determining the reasonableness of a fee award in common fund cases. *New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 243 (E.D. Mich. 2016). Under the percentage of the fund method, an attorney fee award of "close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex class actions." *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011) (listing cases); *see Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 504 (E.D. Mich. 2000) (approving attorneys' fee equaling one-third of net settlement fund).

*Moulton* set out the following factors relevant to the determination of whether a requested attorneys' fee award is reasonable under the circumstances:

(1) the value of the benefit rendered to the plaintiff class;

(2) The value of the services on an hourly basis;

(3) Whether the services were undertaken on a contingent fee basis;

(4) Society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others;

(5) The complexity of the litigation; and

(6) The professional skill and standing of counsel involved on both sides.

*Moulton*, 581 F.3d at 352.

Here, there were no objections to the proposed attorneys' fees of one-third (1/3) of the total settlement fund. This alone strongly supports the requested fee. *See Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 504 (E.D. Mich. 2000) ("the notice sent to the class members informed them that the attorney fees and expenses could total as much as one-third of the settlement amount and not one class member objected."). The *Kogan* court approved an attorneys' fee award of one-third of the net settlement.

Each of the *Moulton* factors support Class Counsel's requested fee. The value of the benefit to the Class is outstanding, and each claimant will receive a significant monetary award because of Class Counsel's diligent and experienced advocacy. Class Counsel achieved this outstanding Settlement without incurring unnecessary costs or subjecting the Class to the risk and expense of prolonged, complex class litigation—the result of which was anything but certain.

Class Counsel's significant work and expenses were taken on an entirely

contingent basis with no guarantee of any recovery. (**Ex. 2**, ¶ 37). Class Counsel's advocacy in this case came at the expense of taking on other cases, and rewarding Class Counsel for taking on this uncertain and difficult case is in the public interest. *See In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 380 (S.D. Ohio 2006) ("Absent adequate compensation, counsel will not be willing to undertake the risk of common fund class action litigation. Counsel who create a common fund for the benefit of a class are entitled to a payment of fees and expenses from the fund relative to the benefit achieved."). In noxious air pollution class actions in particular, the public interest strongly supports rewarding experienced counsel because there is a very limited private market for these risky and expensive cases.

The terms of the retainer agreement with the named Plaintiffs provided for a 33% recovery of any settlement benefits. (**Ex. 2**, ¶ 37). Thus, the market for similar legal services supports the requested fee, which is substantially less than called for by both the retainer agreement and the Settlement. As discussed above, this is highly complex litigation, and there are numerous practical and legal barriers that render any recovery whatsoever, let alone on behalf of the Class, risky and uncertain. Because of LSPC's decades of experience litigating cases of this type, substantial benefits were obtained for the Class. The *Moulton* factors overwhelmingly support approving the requested fee.

**IV.   The Court Should Approve Reimbursement of Reasonable Litigation Expenses.**

"In common fund type cases … class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and settlement[.]" *Allan v. Realcomp II, Ltd.*, 2014 WL 12656718, at *2 (E.D. Mich. Sept. 4, 2014). This "include[s] costs of administration." *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 282(6th Cir. 2016).

To date, Class Counsel has incurred $11,470.84 in out-of-pocket expenses that were necessary in advancing Plaintiffs' claims to resolution. (**Ex. 2 ¶ 34; Ex. 2-A**, LSPC Cost Sheet). Additionally, Class Counsel will be solely responsible for the costs of finalizing the Settlement and disbursing payment to the Class, which remains ongoing, as the claims period is still open. Effectuating a settlement like this after final approval typically costs up to $6,000. (**Ex. 2, ¶ 35**). Accordingly, Plaintiffs request reimbursement of out-of-pocket costs not to exceed $17,000.[5]

The requested costs include itemized amounts for copies and postage, freedom of information requests, procurement of class mailing lists, legal research, experts, costs of the settlement notice, and mediation costs with Judge McQuade, Jr. (**Ex. 2-A**). These requested expenses were necessary to the prosecution of the litigation and are eminently reasonable considering that Class Counsel has borne the entire cost of the litigation, including by providing the class notice and administering the

---

[5] This includes the $11,470.84 in expenditures to date, in addition to up to $5,529.16 to account for ongoing administration costs.

Settlement. Class Counsel has taken every step possible to keep costs low in this case to ensure the largest possible recovery for the Class. The request for reimbursement of actual costs is reasonable and should be approved.

## V. A Modest $5,000 Incentive Award to the Named Plaintiffs Is Appropriate and Reasonable.

The Settlement provides for a modest incentive payment of $5,000 to each of the named Plaintiffs for their efforts in pursuing and obtaining this excellent result for the Class. (**Ex. 1**, pg. 16, § 5(c)). "Incentive awards are typically awards to class representatives for their often extensive involvement with a lawsuit." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir.2003); *see In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473, at *5 (E.D. Mich. Jan. 20, 2015) ("Numerous courts have found it appropriate to specially reward named class plaintiffs for the benefits they have conferred.").

The named Plaintiffs-Class Representatives in this case stepped forward to pursue this litigation on behalf of the Dearborn community, taking on all the risks inherent to federal litigation. Plaintiffs have been highly responsive to all requests for information by counsel and have done everything asked of them to help achieve this outstanding result. (**Ex. 2**, ¶ 39). Accordingly, a modest incentive award for their efforts is appropriate and should be granted.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court

finally approve the Settlement and enter the order attached hereto as **Exhibit 3**.

Dated: July 2, 2025                    Respectfully Submitted,

                                       */s/ D. Reed Solt*
                                       Steven D. Liddle
                                       Laura L. Sheets
                                       D. Reed Solt
                                       **LIDDLE SHEETS  PC**
                                       975 E. Jefferson Avenue
                                       Detroit, MI 48207
                                       (313) 392-0015
                                       sliddle@lsccounsel.com
                                       lsheets@lsccounsel.com
                                       rsolt@lsccounsel.com

                                       *Attorneys for Plaintiffs & the Putative Class*

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 2, 2025, I served a copy of the foregoing upon all counsel of record via the Court's CM/ECF system, which will send notifications of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

*/s/ D. Reed Solt*
D. Reed Solt
